ROBERT J. DOMINICK & another [1] *vs.* BROCKTON-TAUNTON GAS COMPANY.

Norfolk. January 7, 1970. — February 2, 1970.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Evidence,* Relevancy and materiality, Of gas installation.

At the trial of an action against a gas company by plaintiffs who purchased a new house in 1959, into which led a natural gas service line below ground installed by the defendant, for damage to the house in 1965 when a contractor engaged by the plaintiffs lifted the line out of the

[1] Mary S. Dominick.

ground and this broke the line inside the house, causing an explosion, there was no error in the exclusion on direct examination by the plaintiffs of testimony by an expert, who could not say that the installation in 1959 was negligently done, that by 1963 a Federal Housing Agency bulletin demonstrated a safer method of doing a natural gas installation [671]; that in 1965 gas service connections were entering buildings from above ground in the area of the plaintiffs' house [672]; that in his opinion a service connection entering a building above ground would be safer than one entering below ground [672]; and that in 1965 engineering safety standards provided that a service connection should rise above the ground before entering a building [672–673].

TORT. Writ in the Superior Ccurt dated July 1, 1966.

The action was tried before *Hale,* J.

*John E. Lecomte* (*Frank T. Barber, III,* with him) for the plaintiffs.

*Leo M. Lazo* for the defendant.

WILKINS, C.J.    This action of tort is for property damage to the house of the plaintiffs allegedly caused by the negligent supplying or maintaining of gas and gas equipment. In 1959 the plaintiffs purchased a new home in Franklin. This was equipped with a gas fired heating system which had been installed by the defendant. Natural gas was introduced in Franklin in 1953. The defendant's vice-president testified that no companies in the industry in New England knew of any special treatment in this type of system which would be required during changeover from manufactured gas to natural gas, and that all systems were installed in the same manner in 1959.

In December, 1965, the plaintiffs engaged one Lee, a contractor, to excavate in front of the house. While excavating with a front-end loader, Lee lifted the gas service line out of the ground. This broke the line inside the house, causing an explosion damaging the house.

The trial judge directed verdicts for the defendant, subject to the plaintiffs' exception, which has been waived by failure to argue.

The plaintiffs argue exceptions to the exclusion of four questions asked on direct examination of 'one Keating, a mechanical engineer and an expert in the installation of

plumbing and heating systems, called as a witness by the plaintiffs. As stated in the plaintiffs' brief, these questions, which the judge ruled to be inadmissible, were all directed toward determining what engineering standards existed in 1965 of which the defendant, in the exercise of due diligence, should have had knowledge. It was not shown that the standards of 1965 should have superseded those of 1959.

Keating testified that he could not say that in 1959 the gas installation at the plaintiffs' property was done negligently. On voir dire he testified that by 1963 there was in existence a Federal Housing Agency bulletin, demonstrating the safe method of doing a natural gas installation of the type here. The judge "ruled that he would not admit in evidence the application of standard of care as evidenced by the Federal Housing bulletin." The plaintiffs excepted (exception 1).

The plaintiffs argue that the exclusion of Keating's testimony relative to the Federal Housing Agency's bulletin was error, the testimony being admissible as evidence of the standard of care in the industry. They say that the evidence was offered to establish that recognized engineering standards had become apparent by 1963; that Keating's "theory" was familiar to the gas distribution community; and that the defendant should have been familiar with it. They contend not that the bulletin itself was necessarily admissible, but that it should have been admitted as "part of his general knowledge." See G. L. c. 233, § 79B, inserted by St. 1947, c. 385, § 1, where lists, books, etc., may be admitted subject to the discretion of the court.

The evidence here was properly excluded. The installation was not shown to have been negligently made in 1959, nor to have been unsafe. The expert's testimony as to a safe method referred to in a bulletin in 1963 had no relevance as to the year the installation was made. There was nothing to show that the defendant was under any duty to remove previous installations made by it and to substitute another method, or to notify its customers of changes in methods of installation as they might be discovered from time to time.

Keating testified that by 1965 there were engineering safety design considerations which gave rise to a need for a different design from that on the plaintiffs' property; that there were engineering factors exclusive of Federal regulations which for safety reasons preferred one means of entry of the gas service line into a dwelling over another means; that natural gas does not freeze; and that by 1965 the tendency was to locate gas service entry pipes above ground so that any gas line damage or break exterior to the dwelling would be vented into the atmosphere. The witness was then asked whether "in 1965 were such installations entering above grade being employed in this area?" The question was excluded. The plaintiffs excepted and offered to prove the answer would be, "Yes" (exception 2).

The witness was asked if he had an opinion whether the type of service connection entering a building above ground would be more safe, to which he answered that he did have an opinion. When he was not allowed to answer, the plaintiffs excepted and made an offer of proof that it would be more safe (exception 3).

Earlier in his testimony Keating was asked if in December, 1965, in reference to the design of gas installations of the type at the plaintiffs' property, "there were certain engineering standards whereby safety considerations were employed in the design of this type of installation," to which he answered, "Yes." The witness was then asked, "[W]ould you tell us with particular reference to the means of entry of this gas service into the dwelling what these standards were?" The question was excluded, subject to the plaintiffs' exception. Their offer of proof was to the effect that the service line should rise above the ground before entering the building (exception 4).

The plaintiffs argue that the evidence excluded in these last three exceptions was relevant on the standard of care. Again, this had no tendency to prove what was a proper standard in 1959. It should be recalled that the witness had testified that he could not say that the installation in 1959 was negligently done.

There was evidence that in both 1959 and December, 1965, there was not in existence any regulation promulgated or adopted by any State agency or authority establishing the manner in which the gas service line should enter the building.

*Exceptions overruled.*