**MUNCIE AVIATION CORPORATION,**
**Plaintiff-Appellee,**

v.

**PARTY DOLL FLEET, INC.,**
**Defendant-Appellant.**

**No. 75–2007**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Sept. 25, 1975.

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y.,* 5 Cir. 1970, 431 F.2d 409, Part I.

Glover McGhee, Atlanta, Ga., for defendant-appellant.

J. Arthur Mozley, John P. Hines, Ronald L. Reid, Orinda D. Evans, Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, BELL and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

The primary issue this appeal presents is whether advisory materials not having the force and effect of law but published by a governmental agency, are admissible as an exception to the hearsay rule, when such materials are relevant to the issue of negligence and are otherwise trustworthy. We hold that they are admissible and affirm the judgment below.

This case arose out of a collision between Muncie Aviation Corporation's Piper Seneca aircraft and Party Doll Fleet's Cessna 310–J aircraft on March 1, 1972, at the Cartersville-Barstow County Airport in Georgia. Muncie sued for damages to its aircraft, alleging negligence by Party Doll's pilot in failing to follow the standard landing traffic pattern procedures at an uncontrolled airport, and in failing to familiarize himself before the flight with advisory materials issued by the Federal Aviation Administration (F.A.A.). The defendant counterclaimed, alleging negligence by the plaintiff's pilot in failing to yield the right-of-way and in failing to maintain a properly working radio in the aircraft. The jury returned a verdict in favor of Muncie, the plaintiff. Following the trial court's denial of a motion for judgment notwithstanding the verdict or, in the alternative, a new trial, Party Doll appealed.

Of the grounds assigned by the appellant to reverse the judgment below, all of which the Court has considered, the most significant, in terms of this decision's effect on the law, is the alleged error of the trial court in permitting the plaintiff to introduce two advisory circulars promulgated by the F.A.A. containing recommended landing procedures for pilots approaching uncontrolled airports such as the Cartersville-Barstow field. The recommendations, though merely advisory and without the force or effect of law, were offered by the plaintiff as evidence of the standard of care customarily followed by pilots approaching un-

controlled airports. Entitled "Traffic Advisory Practices at Non-Tower Airports," the circulars recommended that pilots approaching an uncontrolled field broadcast their approach over a plane-to-plane frequency of 122.9. They further recommended that this broadcast be made during each of the various "legs" of the standard landing traffic pattern. On cross-examination, the defendant's pilot testified he had neither broadcast his approaching landing over the recommended frequency, nor followed the traffic pattern referred to in the circular, but had instead, broadcast his approach over a 122.8 Unicom frequency.

The defendant objected to the introduction of the circulars, contending that they were merely opinions of the writers, and had not been consulted by the defendant's pilot. The trial court, conceding that the circulars were without the force or effect of law, admitted the publications, as well as testimony of their contents, as evidence of practices customarily followed by pilots at uncontrolled airports and thus, relevant to establish the standard of care in determining negligence. At no time did the court instruct the jury that either the circulars themselves or the inference of custom derived from their contents and the testimony relating to them was dispositive of the applicable standard of care. Rather, they were admitted to provide the jury with guidelines for determining what procedures were followed by pilots in the ordinary course of such landings and to assist the jury in measuring ordinary negligence.

I.

The relevance of the circulars to the issues of the defendant's negligence and the plaintiff's contributory negligence is manifest. Evidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence.[1] Compliance or noncompliance with such custom, though not conclusive

1. 1 B. Jones, *Evidence*, § 4:25, 432 and n. 61 (6th ed. 1972).

on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care.[2] Both the defendant's and the plaintiff's pilots testified to their general familiarity with the F.A.A. advisory materials, and other witnesses testified that the landing procedures recommended in the circulars were generally followed. The trial court was justified therefore in concluding they were relevant evidence of customary practices among aircraft pilots.[3] Thus, the references in the circulars to the various "legs" of the standard traffic pattern were relevant to prove that the defendant's pilot, in failing to execute the standard pattern, fell below the standard of care ordinarily exercised by pilots in similar circumstances. Similarly, the broadcasting frequency recommended in the circulars was relevant to rebut the charge of the plaintiff's contributory negligence, by demonstrating that even had the plaintiff's pilot been flying with a properly operating radio tuned to the recommended frequency, he would not have heard the defendant's pilot announcing his landing over another frequency.

It should also be noted that the circulars were relevant to show the defendant's noncompliance with a specific F.A.A. regulation requiring every pilot, before beginning a flight, to familiarize himself with all available information concerning that flight.[4] To the extent the defendant's pilot failed to consult the advisory circulars or to follow their recommendations, the jury could permissibly infer that he failed to meet the appropriate standard of due care. Thus, the recommendations contained in the F.A.A. advisory circulars, whether offered as evidence of the landing procedures customarily followed by pilots at uncontrolled airports, or to show noncompliance with a specific F.A.A. regulation having the force and effect of law, were clearly relevant to the issues of the defendant's negligence and the plaintiff's contributory negligence.

## II.

We cannot say that the trial court's admission of the advisory circulars violated the general prohibition against the use of hearsay. Hearsay is usually defined as the use of an out-of-court statement for the truth of matters asserted in the statement.[5] Assuming for purposes of this opinion that the F.A.A. advisory circulars were hearsay,[6] the ap-

---

**2.** *Baker v. S/S Cristobal*, 5 Cir. 1974, 488 F.2d 331. It is not necessary, as the defendant suggests, that for evidence of custom to be considered it must be shown to be "universal." *City of Macon v. Yaughn*, 1951, 83 Ga.App. 610, 64 S.E.2d 369, cited for this proposition, merely held that whether a given practice was sufficiently widespread to constitute custom was a question of fact for the jury. The purpose of admitting such evidence is "simply to show the ordinary practice. . . . [I]t is not necessary to prove that the practice or usage was universal." 29 Am.Jur.2d Evidence § 318 at 365 (1967); *Silver Falls Timber Co. v. Eastern & Western Lumber Co.*, 1935, 149 Or. 126, 40 P.2d 703.

**3.** *Compare Mississippi Power & Light Co. v. Whitescarver*, 5 Cir. 1934, 68 F.2d 928, 930, in which this Court upheld the exclusion of a National Electric Safety Code, issued by the Department of Commerce, Bureau of Standards, where there was no evidence linking the offered code with any custom in the industry, and where the expert witness who identified the code did not refer to it as supporting his opinion nor testify that it was accepted by electrical experts as standard.

**4.** 14 C.F.R. § 91.5.

**5.** C. McCormick, *Evidence* § 225 at 460 (1954).

**6.** Arguably, the F.A.A. advisory materials are not hearsay. Under Rule 801(a) of the recently enacted Federal Rules of Evidence, a statement is hearsay only if it is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." The notes of the advisory committee further emphasize, "the effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless intended to be one." Fed.R.Evid. 801(a). Though the Federal Rules of Evidence did not become effective until July 1975, the Court notes this definition is merely a codification of existing law. Over thirty years ago, Wigmore defined those statements which the hearsay rule prohibits as "extra-judicial testimonial *assertions*." V Wigmore,

plicable law governing their admissibility is Federal Rule of Civil Procedure 43(a).[7] By "enabling federal courts to apply a liberal, flexible rule for the admissibility of evidence, unencumbered by common law archaisms",[8] Rule 43 provides considerable leeway for expanding the traditional exceptions to the hearsay rule when the relevancy, trustworthiness, and probative value of the evidence is otherwise guaranteed.

In *Dallas County v. Commercial Union Assurance Co.,* 5 Cir. 1961, 286 F.2d 388, this Court adopted the policy of Rule 43(a) by upholding the admission of an unsigned newspaper article written 58 years before, recounting the details of a then recent fire in the Dallas County Courthouse, to prove the courthouse had been previously damaged by fire. Analyzing the rationale underlying the hearsay rule and its exceptions, we decided the primary criteria for permitting the introduction of otherwise inadmissible hearsay were the elements of necessity and trustworthiness. Sufficient necessity for the introduction of the news-

paper clipping was found in the impracticability of attempting to locate the author of the article and of attempting to procure eyewitnesses to the fire whose recollection would have been accurate at the time the case was tried. Trustworthiness was found in the general reliability of a small town newspaper in reporting the occurrence of a local fire, and in the absence of any motive to falsify.

The elements of practical necessity and trustworthiness are similarly present in the instant case. The virtual impossibility, not to mention practical inconvenience and prohibitive cost, of locating and calling as witnesses the various compilers of the advisory circulars in order to test their recommendations by cross-examination, makes use of the circulars a practical necessity for obtaining the information contained in the recommendations. Their trustworthiness is guaranteed by the fact that they were recently published by a governmental agency whose only conceivable interest was in insuring safety and whose recommendations "should have the highest

---

*Evidence,* § 1362, 3 (3d Ed. 1940) (emphasis added). Since the advisory circulars contained no assertions of fact, but merely recommended procedures, arguably they do not fall within the class of "statements" subject to the hearsay rule. On the other hand, since the circulars were introduced to prove the F.A.A.'s belief that the procedures recommended were in fact safer than others, they could be construed as implied assertions of recommended piloting practices. Moreover, since the circulars were prepared by persons not available for cross-examination whose opinions were not subject to challenge or clarification, the recommendations suffered from the usual dangers inherent in traditional hearsay. Cf. *Yellow Bayou Plantation, Inc. v. Shell Chemical, Inc.,* 5 Cir. 1974, 491 F.2d 1239. In any event, the characterization of the evidence as hearsay or non-hearsay is not dispositive of the outcome of the case, for the court finds that the evidence was sufficiently trustworthy to be admissible.

7. Contrary to the defendant's implication that Georgia law governs this issue, this Court held in *Monarch Insurance Company of Ohio v. Spach,* 5 Cir. 1960, 281 F.2d 401, 408, that the admissibility of evidence is procedural, not substantive, and is thus governed by federal

law. Rule 43(a) of the Federal Rules of Civil Procedure provides:

"All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made."

Thus, "in a federal court the rule, whether federal or state, which favors the reception of the evidence governs." *New York Life Ins. Co. v. Schlatter et al.,* 5 Cir. 1953, 203 F.2d 184, 188. In the instant case, Georgia law would govern only if it validated the admission of the evidence where federal law did not. Counsel has brought to the Court's attention no Georgia case on point, and, as federal law is broad enough to admit the evidence, no further inquiry is necessary.

8. *Dallas County v. Commercial Union Assurance Co.,* 5 Cir. 1961, 286 F.2d 388, 395.

probative value regarding national, state, or local practices."[9]

■ In holding admissible advisory materials promulgated by a governmental agency, this Court's decision is in accord with the modern trend of cases finding national safety codes representative of "a consensus of opinion carrying the approval of a significant segment of an industry" and offerable as exemplifying safety practices prevailing in the industry.[10] Courts have become increasingly appreciative of the value of national safety codes and other guidelines issued by governmental and voluntary associations to assist the trier of fact in applying the standard of due care in negligence cases.[11] Though the law is by no means settled,[12] this Court finds that the inherent trustworthiness of such codes and recommendations, coupled with the need for their introduction in order to impart relevant information not contained elsewhere,[13] is sufficient to justify their admission, notwithstanding the traditional dangers of hearsay evidence.

■ The rule of admissibility announced today is not, of course, absolute. It is always within the trial court's discretion to exclude published recommendations or standards if they fail to meet the threshold tests for trustworthiness and relevancy. For example, if the guidelines were published so long before the events in question occurred as to be outmoded, or if practices within the industry had changed radically since the guidelines were promulgated, a court could, without abusing its discretion, properly exclude the evidence.[14] Similar-

9. Comment, *Admissibility of Safety Codes, Rules and Standards in Negligence Cases*, 37 Tenn.L.Rev. 581, 583 (1970).

10. *McComish v. DeSoi*, 1964, 42 N.J. 274, 280, 200 A.2d 116, 120. In holding admissible in a negligence action against the builder of A slings certain manuals containing requirements for the number and size of clips to be used in constructing such slings, the New Jersey Supreme Court noted:

"Such a [safety] code is not introduced as substantive law, as proof of regulations or absolute standards having the force of law or of scientific truth. It is offered in connection with expert testimony which identifies it as illustrative evidence of safety practices or rules generally prevailing in the industry, and as such it provides support for the opinion of the expert concerning the proper standard of care." *Id.*, at 121.

11. See e. g. *Lemery v. O'Shea Dennis, Inc.*, 1972, 112 N.H. 199, 291 A.2d 616; *Nordstrom v. White Metal Rolling & Stamping Corp.*, 1919, 75 Wash.2d 629, 453 P.2d 619; *Boston & M. Railroad v. Talbert*, 1 Cir. 1966, 360 F.2d 286; *Spurr v. La Salle Constr. Co.*, 7 Cir. 1967, 385 F.2d 322; *Wallner v. Kitchens of Sara Lee, Inc.*, 7 Cir. 1969, 419 F.2d 1028; *Quinn v. United States*, E.D.Ark.1970, 312 F.Supp. 999, *aff'd* 8 Cir., 439 F.2d 335; *Merchants Nat'l Bank v. Elgin, J. & E. R. Co.*, 1971, 49 Ill.2d 118, 273 N.E.2d 809; *Jorgensen v. Horton*, 1973, Iowa, 206 N.W.2d 100; *Reil v. Lowell Gas Co.*, 1967, 353 Mass. 120, 228 N.E.2d 707; *Post v. Manitowoc Engineering Corp.*, 1965, 88 N.J.Super. 199, 211 A.2d 386; *State Farm Fire & Casualty Co. v. Miller Metal Co.*, 1971, 83 N.M. 516, 494

P.2d 178, *cert. quashed*, 83 N.M. 740, 497 P.2d 742; *Meehan v. Philadelphia Electric Co.*, 1967, 424 Pa. 51, 225 A.2d 900; *Wheeler v. Jones*, 1967, 19 Utah 2d 392, 431 P.2d 985. *See generally* Annot., 58 A.L.R.3d 148 (1974).

12. See *McDonald v. United States*, N.D.Tex. 1967, 284 F.Supp. 978, where the district court, though of the opinion that the National Fire Code of the National Fire Protection Association was properly before it, expressly disregarded it out of precaution due to the unsettled state of the law on the admissibility of such codes.

13. To assert that evidence of custom may be shown by other means is not to detract from the argument in favor of admissibility. Absent a binding statute prescribing the applicable standard of care, all evidence on this issue is cumulative. Thus, a party seeking to establish certain practices as customary and probative of the standard of care should be entitled to prove this issue both by introduction of the published standards and by expert testimony attesting to the usual compliance with such standards.

14. Thus in *Mississippi Power and Light v. Whitescarver*, 5 Cir. 1934, 68 F.2d 928, this Court approved the trial court's exclusion of the National Electric Safety Code to show the defendant's power lines had been strung above the minimum recommended height, noting that the preface to the code itself stated that as to numerous matters there were conflicting views, that many changes had been made in that edition, that future growth and development could be expected, and that criticism was invited. Observing that the area was a

ly, if the guidelines were not published until after the events in question occurred the court could properly exclude them for lack of relevancy.[15]

In addition to Rule 43(a) and the modern trend favoring the admissibility of national safety codes and recommendations, additional support is lent the decision today by Rules 803(24) and 804(b)(5) of the new Federal Rules of Evidence. These rules permit the introduction of hearsay statements not covered by any of the specifically enumerated exceptions, on a preliminary finding of trustworthiness, relevancy, and practical necessity.[16] The federal rules are the culmination of years of research and study and represent the most enlightened views on the law of evidence. In holding admissible advisory materials published by a governmental agency, where relevant, trustworthy, and of practical necessity, our decision furthers the policy embodied in these federal rules.

The trial court's decision to admit the advisory circulars was not error. The charge was free from reversible error. The verdict of the jury was in accordance with the law and was supported by substantial evidence. For the foregoing reasons, the judgment of the district court is

Affirmed.

"controversial and developing science in which opinions may vary and experience work great changes", the Court found no error in the trial court's exclusion of the code. It is noteworthy, however, that this case was decided before the enactment of Rule 43(a) with its liberal policy of admitting trustworthy hearsay. This Court cannot say, therefore, that a contrary ruling by a trial court in such a case today, involving changing standards in a controversial area, would be an abuse of discretion.

15. See, e. g. *Dominick v. Brocton-Taunton Gas Co.,* 1970, 356 Mass. 669, 255 N.E.2d 370.

16. Fed.R.Ev. 803(24) and 804(b)(5) specifically permit, as an exception to the hearsay rule, "[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence".