Catherine B. SAGE, Administratrix of the Estate of James R. P. Bell, III

v.

ROCKWELL INTERNATIONAL CORPORATION.

No. C–76–249.

United States District Court, D. New Hampshire.

Oct. 3, 1979.

Brown & Nixon, Professional Ass'n, Manchester, N.H., for plaintiff.

Orr & Reno, Professional Ass'n, Concord, N.H., for defendant.

## PLAINTIFF'S MOTION FOR ADMISSIBILITY OF PUBLIC RECORDS AND REPORTS UNDER FEDERAL RULES OF EVIDENCE RULE 803(8)

LOUGHLIN, District Judge.

### ORDER

The Administratrix has brought this wrongful death claim; as a result of the decedent, a naval pilot, being killed in an airplane crash on December 21, 1975 at or near Ukiah, California. A fellow naval officer, R. M. Fraley was also killed and both decedents' estates have sued the defendant, Rockwell International Corporation, Manufacturer of the aircraft.

The United States Navy issued two reports on the crash. The first report issued was prepared by the Judge Advocate General's Office and discussed the general circumstances surrounding the crash (JAG Report). The other report was prepared by the Naval Rework Facility at Alameda, California and contained conclusions about the cause of the crash which were developed from engineering analyses based upon the airplane wreckage (NARF Report).

Hereinafter the Judge Advocate General's Office report shall be referred to as the (JAG Report) and the Naval Rework Facility based at Alameda, California shall be referred to as the (NARF Report).

A companion case, *Fraley et al. v. Rockwell International Corporation* is presently pending in the United States District Court for the Southern District of Ohio, Western Division, Carl B. Rubin, J. Judge Rubin on May 30, 1979 ruled on the very same issues presented to this Court. 470 F.Supp. 1264.

Both reports were based upon investigations which were conducted according to federal law. The reports are replete with hearsay evidence or statements including military sources and non-military sources such as the Sheriff's Department of Mendocino County, doctors and an eyewitness.

Defendant with some exceptions as set forth in its pleadings, objects to the admissibility of the (JAG Report) and the (NARF Report).

### THE LAW

Hearsay Rule 801(c).

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Hearsay Exceptions 803.8

"Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstance indicate lack of trustworthiness."

█ The crucial issue regarding admissibility is whether the sources of information or other circumstances indicate lack of trustworthiness.

A recent case on this issue is *Melville v. American Home Assurance Co.*, 584 F.2d 1306 (1978) (3rd C) at pages 1315 and 1316.

"The opinion and hearsay objections raised by the American pose more difficult issues. The Directives were admitted as an exception to the hearsay rule under Fed.R. Evid. 803(8), which allows into evidence:

'[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . or (C) factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.'

Although the legislative history concerning the scope of this provision is equivocal, *compare* H.R.Rep. No. 93–650, 93d Cong., 1st Sess. 14, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7075, 7088 *with* S.Rep. 93–1277, 93d Cong.2d Sess. 18, *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 7051, 7064–65, the Advisory Committee's Notes specifically conclude that 'the rule [Rule 803(8)(C)] assumes admissibility in the first instance [of evaluative reports] but with ample provision for escape if sufficient negative factors are present.' Advisory Committee's Note on Rule 803, reprinted in 4 Weinstein's Evidence 803–45– 46. The district court judge followed the Advisory Committee's Notes in concluding that the Airworthiness Directives were admissible under Rule 803(8)(C) even though they contained evaluative materials. In our opinion the trial judge was correct in this determination since the proviso to Rule 803(8)(C) permits exclusion of such reports if evidence of lack of trustworthiness is introduced. This exclusionary mechanism provides a sufficient safeguard against the admission of unreliable evidence. *See* 4 Weinstein's Evidence ¶ 803(8)[03]; McCormick, Handbook of the Law of Evidence § 317 (2d ed. 1972).

This reading of Rule 803(8)(C) reconciles it with both Rule 702 (allowing objections to the qualifications of an expert witness) and Rule 705 (allowing disclosure of facts and data underlying an expert's testimony on cross-examination). Official reports are admitted as an exception to the hearsay rule because they are presumed to be generally reliable. The objections permitted by Rules 702 and 705 provide a means of testing their reliability. Before these objections may be recognized, however, the party challenging the validity of an official report admitted under 803(8)(C) must come forward with some evidence which would impugn its trustworthiness. See *Muncie Aviation Corp. v. Party Doll Fleet Inc.*, 519 F.2d 1178 (5th Cir. 1975) (FAA advisory materials admitted as exception to hearsay rule because of indicia of reliability). To allow objections to be sustained under Rules 702 and 705 without a showing of untrustworthiness would have the practical effect of nullifying the exception to the hearsay rule provided by Rule 803(8)(C). On retrial, then, the Directives will be admissible unless American comes forward with evidence that would indicate their lack of trustworthiness."

Subsequent to *Melville v. American Home Assurance Co., supra,* the sixth circuit in *Baker v. Elcona Homes,* 588 F.2d 551 (1978) the Court in a lengthy discourse discussed the ramifications of Fed.R.Evid. 803(8) at pages 556, 557 and 558:

"The relatively little case law which has developed since the adoption of Rule 803(8) supports the admissibility of the police report. A police report is, in our judgment, a 'public record and report' within the meaning of the first part of Rule 803(8). The direct observations and recorded data of Sgt. Hendrickson in the course of his investigation which were placed upon the report clearly are 'matters observed pursuant to duty imposed by law as to which matters there was a duty to report,' under Rule 803(8)(B), and thereby not admissible under the hearsay rule. The principal concerns, however, are whether Slabach's statement as recorded in the police report and whether the findings of Sgt. Hendrickson as to the color of the light at the time of the accident and his markings on the boxes relative to the contributing circumstances of the accident were properly allowed to be put before the jury as substantive evidence.

We address first the question of whether the finding that the Valiant ran the red light is a 'factual finding' within the meaning of Rule 803(8)(C). We conclude that it is.

**1208**

In enacting the Federal Rules of Evidence, the House Judiciary Committee adopted a narrow interpretation of 'factual findings.'

'The Committee intends that "factual findings" be strictly construed and that evaluations and opinions in the report shall not be admissible under this Rule.' Report of the Committee on the Judiciary, H.R. Rep. No. 93–650, 93d Cong., 1st Sess. 14 (1973), U.S.Code Cong. & Admin.News 1974, pp. 7051, 7088. The Senate, however, disagreed with this narrow interpretation:

'The House Judiciary Committee report contained a statement of intent that "the phrase 'factual findings' in subdivision (C) be strictly construed and that evaluations or opinions contained in public reports shall not be admissible under this rule." The committee takes strong exception to this limiting understanding of the application of the rule. We do not think it reflects an understanding of the intended operation of the rule as explained in the Advisory Committee notes to this subsection. The Advisory Committee notes on subsection (C) of this subdivision point out that various kinds of evaluative reports are now admissible under Federal statutes. 7 U.S.C. § 78, findings of Secretary of Agriculture prima facie evidence of true grade of grain; 42 U.S.C. § 269(b) bill of health by appropriate official prima facie evidence of vessel's sanitary history and condition and compliance with regulations. These statutory exceptions to the hearsay rule are preserved. Rule 802. The willingness of Congress to recognize these and other such evaluative reports provides a helpful guide in determining the kind of reports which are intended to be admissible under this rule. We think the restrictive interpretation of the House overlooks the fact that while the Advisory Committee assumes admissibility in the first instance of evaluative reports, they are not admissible if, as the rule states, "the sources of information or other circumstances indicate lack of trustworthiness." '

Report of the Committee on the Judiciary, S.Rep. No. 93–1277, 93d Cong., 2d Sess. 18 (1974), U.S.Code Cong. & Admin.News

1974, p. 7064. While the Conference Committee finally adopted the House's version of this Rule, both the House and senate versions employed the term 'factual findings', and the differing views as to the meaning of that term were not resolved. The Advisory Committee Notes, however, accept 'evaluative reports' as being within the meaning of factual findings under Rule 803(8)(C).

Generally, the courts have been liberal in determining admissibility under Rule 803(8). Thus in *Melville v. American Home Assurance Company*, 443 F.Supp. 1064 (E.D. Pa.1977), the court allowed into evidence two FAA Airworthiness directives, which impugned the mechanical safety of the model of plane which had been involved in that lawsuit. In admitting the reports, the district court took note of the conflict between the House and Senate interpretations of 'factual findings', *id.* at 1113–14, and agreed with the Senate Judiciary Committee that the Advisory Committee's methodology provided adequate guidance and safeguards for admissibility of such reports under Rule 803(8)(C).

In *United States v. School District of Ferndale, Michigan*, 577 F.2d 1339 (6th Cir. 1978), Judge Celebrezze reversed a determination of the district court that the findings of an HEW hearing examiner were inadmissible hearsay, untrustworthy and did not fall within the exception of Rule 803(8)(C) since they were not factual findings. There our court held that the district judge should have received under Rule 803(8) as evidence the findings of an HEW hearing examiner that a school had been established and maintained as a black school for segregatory purposes and that the district court had erred in excluding the findings as hearsay and as untrustworthy. The court stated:

'The United States asserts that the findings, while hearsay, are admissible under Federal Rule of Evidence 803(8)(C) as a public record or report. The district court ruled that the findings did not fall within the scope of Rule 803(8)(C) since they were not "factual findings resulting from an investigation made pursuant to authority

granted by law." In particular, the court felt the HEW proceedings did not amount to an "investigation" but rather constituted a "quasi-judicial hearing."

We agree with the United States that the HEW findings come within the scope of Rule 803(8)(C) as they are "factual findings resulting from an investigation made pursuant to authority granted by law." The investigation vs. adjudication distinction fashioned by the district court finds no support in the rule or the cases interpreting it. The Supreme Court has construed Rule 803(8)(C) to apply in an analogous situation. *Chandler v. Roudebush*, 425 U.S. 840, 863, n. 39, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). *See also Hackley v. Roudebush*, 171 U.S.A. App.D.C. 376, 520 F.2d 108, 150–51 & 156–57 n. 195 (1975). Clearly, the HEW proceedings were an "investigation" into the state of affairs in the Ferndale schools within the plain meaning of that word. That the proceedings could also be labeled a "quasi-Judicial hearing" is of no consequence in this regard.' 577 F.2d at 1354 (footnote omitted).

Applying the rule and its background to the facts here, it is apparent that whether the light was red or green for one driver or the other at the time of the accident is distinctly a factual finding within the meaning of the rule, and certainly far more so than the HEW finding in *Ferndale*, which we believe, is essentially an evaluative opinion resulting from evidence. It is also clear from the construction of the rule itself that factual findings admissible under Rule 803(8)(C) may be those which are made by the preparer of the report from disputed evidence, as contrasted to those facts which are 'matters observed pursuant to duty imposed by law as to which matters there was a duty to report' called for under Rule 803(8)(B). The more conclusory nature of the HEW report, however, did not disturb our court in *Ferndale*, and it was concerned rather with the district judge's determination that the report lacked trustworthiness.

In determining whether the 'sources of information or other circumstances' indicate lack of trustworthiness, the Advisory Committee Notes list four suggested factors for consideration: (1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held on the level at which conducted, and (4) possible motivational problems. See Notes of Advisory Committee on Proposed Rules, *reprinted following* Fed.Rules of Evid. 803, 28 U.S.C.A. The Advisory Committee further observed:

'The formulation of an approach which would give appropriate weight to all possible factors in every situation is an obvious impossibility. Hence the rule, as in Exception (6), assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present. In one respect, however, the rule with respect to evaluative reports under item (c) is very specific: they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case.' "

The crucial issue regarding the (JAG report) is that the testimony was prepared by an inexperienced investigator in a highly complex field of investigation. This language for all intents and purposes is quoted from page 6 of Carl B. Rubin's order. It appears that Judge Rubin found a lack of *trustworthiness because of the lack of the special skill or experience of the official.*

Due credence has been given to Judge Rubin's well-reasoned opinion, but this Court is of the opinion it goes to the weight of his testimony, without denying the admissibility of the evidence. (JAG report)

Depositions of some of the witnesses in the (NARF report) and (JAG report) have also been taken, under oath and subject to cross examination. Many witnesses have left the jurisdiction of California whose testimony is incorporated in these reports.

Reference is also made to Weinstein on Evidence. 803–200.

The type of record covered by subdivision (C)—"factual findings resulting from an in-

vestigation made pursuant to authority granted by law" had a mixed reception prior to the adoption of the Federal Rules. Part of this was undoubtedly due to the courts' reluctance to admit reports not completely based on personal knowledge, without however, analyzing the rationale for requiring personal knowledge in investigative situations. Courts saw only that the officer's conclusions were frequently based on information furnished by someone else. Wigmore argued that when there was a duty to investigate, this duty carried with it sufficient guaranties of trustworthiness to override the general principle that a witness must have firsthand knowledge. McCormick, a strong advocate of the desirability of admitting investigative reports, explained why they were ordinarily reliable:

"The following are some of the reasons for receiving the investigative report as evidence so far as the report is within the duty of the officer making it including those portions based on what he is told by those who claim to know and including his conclusions. The most important reason is time. The officer comes on the scene usually as early as it is feasible to get there. Usually the investigators of the parties come later and the statements are frequently partial and one-sided. The witnesses at the trial have often only a dim recollection of the event and their testimony rests mostly on their pre-trial refreshment of memory by these statements. The officer is often able to interview witnesses before they have been pulled one way or the other by the parties. The officer, too, is frequently a specialist—a doctor reporting death, a fire marshall investigating a fire—or at least experienced in like investigations, such as a highway patrolman reporting on a collision."

██ The Court rules as follows on the admissibility of evidence. Dot-FAA Docket File

The principal objection by the defendant is that the above is irrelevant and immaterial. What may be irrelevant and immaterial at one stage of the trial may be relevant and material at a later stage. Rebut-

tal or impeachment. See also Federal Rule Evid. 103(a)(1)

██ The Court will not rule in a vacuum on this issue at this time. No ruling.
(NARF Report)
Admissible
(JAG Report)
Admissible
The Official Or Aircraft Mishap Board Report

The Court will hold its ruling on its admissibility in abeyance until the time of trial.

Medical and Pathology Reports and Conclusions

Admissible. It is the Court's understanding that some depositions have already been taken of the pathologist and County Coroner.

Statements of Michelle Marie Piper.

Court refuses to rule until her deposition is read.

Opinions, Conclusions and Recommendations Arising from Reports.

Granted where not inconsistent with prior rulings.

SO ORDERED.