James R. ZENS and Darlene K. Zens, Plaintiffs and Appellants,

v.

CHICAGO, MILWAUKEE, ST. PAUL AND PACIFIC RAILROAD COMPANY, and Aberdeen Township, Defendants/Appellees & Third–Party Plaintiffs,

v.

MAJESTIC CONTRACTORS LTD., formerly Majestic Wiley Contractors, Ltd., a corporation, Third–Party Defendants.

No. 17349.

Supreme Court of South Dakota.

Considered on Briefs Sept. 9, 1991.

Decided Dec. 18, 1991.

James M. Cremer, Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for plaintiffs and appellants.

Chester A. Groseclose, Jr., Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellee, Chicago, Milwaukee, St. Paul and Pacific R. Co.

Jeffrey T. Sveen, Siegel, Barnett & Schutz, Aberdeen, for defendant and appellee Aberdeen Tp.

WUEST, Justice.

This is an appeal by plaintiffs, a husband and wife (hereinafter Zenses) from a jury verdict and judgment in favor of defendants, Chicago, Milwaukee, St. Paul & Pacific Railroad and Aberdeen Township (hereinafter Railroad & Township) in a personal injury action. This is the second appeal of this proceeding. The first appeal, reversing a summary judgment in favor of the defendants, remanded the matter for a jury trial. *Zens v. Chicago, Milwaukee, St. Paul & Pac. R.*, 386 N.W.2d 475 (S.D.1986) (*Zens I*). We affirm the trial court.

In the summer of 1981, Mr. Zens was employed by Majestic Contractors, Ltd. (Majestic). On August 26, 1981, Zens was a passenger in a bus operated by Majestic, driven by James Lancaster (Lancaster) another Majestic employee. As the bus drove along a gravel township road (Country Club Road), one tire left the roadway. The

cause of this was disputed at trial.[1] In any event, after leaving the roadway, Lancaster testified that he was unable to steer back onto the roadway. The bus then partially overturned in the ditch. As a result, Zens was injured.

The ditch lies between Country Club Road and Railroad's tracks. Originally, the ditch was eighteen to twenty feet further away from the roadway and was on railroad property. In 1973, Railroad, with Township's knowledge, moved the ditch immediately adjacent to the southern border of Country Club Road. Railroad took this action to facilitate the addition of a second set of tracks. Railroad's plans indicated the slope of the new ditch would be at a 2:1 ratio,[2] steeper than it was before. Testimony at trial established that, in fact, the slope varied in different locations. Township erected caution signs along the roadway to call attention to the ditch.

By 1978, the ditch had become partially filled with silt. Township hired a contractor, Marvin Lout (Lout), to retrench the ditch. Lout testified that he did not intentionally alter the contours of the ditch during the retrenching operation, but was unable to testify whether the bottom of the ditch or the contours of the slope may have been altered. We will develop the facts further as we discuss the issues raised.

The jury returned a verdict for both defendants. Zenses moved for a new trial. The court denied that motion. Zenses appeal raising three issues. We will discuss the three issues seriatim.

I. Whether the trial court committed reversible error in admitting 1984 A.A.S.H.T.O. revised guidelines published three years after the accident occurred.

II. Whether the trial court erred in restricting Zenses from introducing evidence concerning Township's ability to condemn railroad property to insure construction of a ditch consistent with A.A.S.H.T.O. standards.

III. Whether the jury's verdict was supported by sufficient evidence.

I.

■ Road building standards used in South Dakota for the construction of local and township roads are promulgated by the American Association of State Highway Transportation Officials (A.A.S.H.T.O.). A.A.S.H.T.O. formulates guidelines after national meetings, involving engineers from each state, where policies and recommendations are formulated. In 1970, A.A.S.H.T.O. recommended ditches adjacent to local township roads be constructed with in-slopes of "no greater steepness than 4:1."[3] In 1982, the South Dakota Department of Transportation (D.O.T.) published its own Road Design Manual which adopted the 4:1 slope standard. At that time, the A.A.S.H.T.O. guidelines were in the process of being revised, and in 1984, A.A.S.H.T.O. changed its recommendation for ditch slopes stating 2:1 in-slopes were acceptable for local roads with a relatively low volume of traffic. This change was not adopted by D.O.T. In 1989, the A.A.S.H.T.O. guidelines were amended once again—reinstating less steep in-slope recommendations.

The 1984 A.A.S.H.T.O. guidelines were admitted over objection during cross-examination of Zenses' expert witness, Clint Gregory. Gregory had previously testified regarding the 2:1 in-slope recommendations adopted in 1970. The statute that permits

1. Lancaster claims he edged to the side of the road to avoid an oncoming vehicle. Another passenger claimed Lancaster was steering with one hand while cleaning the windshield with the other. The investigating officer observed the road was dry and smooth and that the primary cause of the accident was Lancaster's failure to pay attention.

2. Indicating that for every two feet of horizontal distance, the surface declines by one foot.

3. The 1970 A.A.S.H.T.O. Geometric Design Guide recognized that such precautions would not always be feasible. It noted the existence of right-of-way restrictions, terrain and limited funds may preclude constructing gently sloping ditches. American Association of State Highway Officials, Geometric Design Guide for Local Roads and Streets (Part I–Rural) 4 (1970). In such cases, the Guide recommended judicious use of warning signs and guardrails.

the introduction of such guidelines is SDCL 19–16–22 (1987) (Fed.R.Evid. 803(18)):

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice are not excluded by § 19–16–4, even though the declarant is available as a witness. If admitted, the statements may be read into evidence but may not be received as exhibits.[4]

Prior to admitting the 1984 revisions, the following colloquy took place during Railroad's offer of proof:

Q. "You've been carrying that manual around since you've been here in Aberdeen prepared to testify on Mr. Cremer's [Zenses' attorney] behalf, I'm talking about the '84 manual?"

A. "Yes. That's right."

Q. "And apparently you brought it with you because you thought it had some application to this case?"

A. "It's part of the material I was using to prepare for this case, yes."

Gregory admitted he relied on the 1984 manual in formulating his opinion the Country Club Road was unsafe. In addition, Gregory recognized the 1984 manual

was reliable and authoritative. Thus, the elements of admission required by SDCL 19–16–22 were satisfied.[5]

However, Zenses contend the 1984 guidelines were irrelevant since the ditch was constructed in 1973 and the accident occurred in 1981.

> The extent to which a witness may be cross-examined as to facts which are otherwise immaterial for the purpose of testing his reliability ... is ordinarily within the discretion of the trial court and much latitude is to be allowed in this line, and unless an abuse of discretion is clearly shown either in allowing or restricting such cross-examination, this court will not interfere with the ruling of the court below.

*Plank v. Heirigs*, 83 S.D. 173, 179, 156 N.W.2d 193, 197 (1968).

We recognize the general rule that guidelines adopted after the accident in question generally have no tendency to prove what the proper standard of care was when the accident occurred.[6] Nonetheless, "[t]here is general agreement that where expert witnesses have specifically relied on a treatise or text as supporting their opinions given on direct examination, they may be cross-examined from the treatise for the purpose of showing that it does not in fact support their position." 31A Am.Jur.2d *Expert and Opinion Evidence* § 125, at 132 (1989). *See also Hercules*

---

**4.** The rationale utilized by a growing number of courts which have held such standards admissible is that such standards are illustrative evidence of safety practices prevailing in a given community. *See* Annot., *Admissibility in Evidence, on Issue of Negligence, of Codes or Standards of Safety Issued or Sponsored by Governmental Body or by Voluntary Association*, 58 A.L.R.3d 148, 154 (1974) (collecting cases). Thus, "[w]hen coupled with the safeguard of identification and a showing of general acceptance in the community or industry concerned by means of an expert witness," such standards are properly admissible. *Lemery v. O'Shea Dennis, Inc.*, 112 N.H. 199, 291 A.2d 616, 618, 58 A.L.R.3d 143, 146 (1972). *Accord, Jorgensen v. Horton*, 206 N.W.2d 100, 102–103 (Iowa 1973); *McComish v. DeSoi*, 42 N.J. 274, 200 A.2d 116, 120–121 (1964).

Standards or guidelines lacking the force of law have been admitted as exceptions to the hearsay rule. *Muncie Aviation Corp. v. Party Doll Fleet,*

*Inc.*, 519 F.2d 1178, 1182–83 (5th Cir.1975) (where relevant and otherwise trustworthy); *Johnson v. William C. Ellis & Sons Iron Works*, 609 F.2d 820, 823, 64 A.L.R.Fed. 965, 968–69 (5th Cir.1980).

**5.** The trial court also admitted the 1982 D.O.T. Road Design Manual which retained the 4:1 ratio recommendation.

**6.** "[S]ubsequently promulgated rules may simply reflect a new consensus in the industry rather than a codification of the prevailing view in the industry at the time [the accident occurred]." *Shears v. Pardonnet*, 80 Mich.App. 358, 263 N.W.2d 373, 375–76 (1977); *Dominick v. Brockton-Taunton Gas Co.*, 356 Mass. 669, 255 N.E.2d 370 (1970). By contrast, Gregory admitted that A.A.S.H.T.O. had been considering changes in its recommendations since 1975, three years prior to the time Township retrenched the ditch.

*Powder Co. v. DiSabatino*, 55 Del. 516, 188 A.2d 529, 533 (1963). Thus, we cannot say admitting the 1984 revised standards on cross-examination of Zenses' expert was a clear abuse of discretion.

We do point out, however, since such evidence is admitted pursuant to the learned treatise exception to the rule against hearsay, it is improper to admit such evidence as an exhibit to accompany the jury in its deliberations. SDCL 19–16–22. *Accord Garbincius v. Boston Edison Co.*, 621 F.2d 1171, 1175 (1st Cir.1980); *Gordy v. City of Canton, Mississippi*, 543 F.2d 558, 564 (5th Cir.1976). The proper method is to read the information to the jury. The rationale for this rule is to avoid the danger that the jury might read admitted materials without an expert's guidance thereby becoming confused by technical language. *United States v. Mangan*, 575 F.2d 32, 48 n. 19 (2nd Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978). The exhibits admitted here were short excerpts from the 1984 manual, were relatively straightforward and only the portions discussed by Gregory (three pages) were submitted to the jury.

To succeed on appeal, "[n]ot only must error be demonstrated, but it must also be shown to be prejudicial error." *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D. 1976). Prejudicial error is "that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it." *K & E Land and Cattle, Inc. v. Mayer*, 330 N.W.2d 529, 533 (S.D.1983). It is error "without which the jury would have probably returned a different verdict." *Shaull v. Hart*, 327 N.W.2d 50, 53 (S.D.1982) (citing *Schmidt v. Wildcat Cave, Inc.*, 261 N.W.2d 114 (S.D.1977)). On this record, the admission of excerpts from the 1984 manual as exhibits was not prejudicial error. *See Garbincius*, 621 F.2d at 1175;

*Mangan*, 575 F.2d at 48; *Gordy*, 543 F.2d at 564.

## II.

The trial court, via a pretrial motion in limine, prohibited Zenses from introducing evidence concerning Township's ability to condemn railroad property to insure adequate space to construct a ditch with a slope no steeper than 4:1. Zenses contend the trial court erred. The only authority Zenses cite are two cases, which state that an incorporated town may condemn railroad property: *Town of Emery v. Chicago, M. & St. P. Ry. Co.*, 35 S.D. 583, 153 N.W. 655 (1915); *Town of Andover v. Cooper*, 37 S.D. 258, 157 N.W. 1053 (1916) (dicta). These cases have nothing to do with defective highway conditions or admission of evidence. Failure to cite authority supporting an issue on appeal violates SDCL 15–26A–60(6) (1984) and waives that issue. *Nielson v. McCabe*, 442 N.W.2d 477, 480 (S.D.1989); *Johnson v. John Deere Co.*, 306 N.W.2d 231, 239 (S.D.1981). Zenses have come dangerously close on this issue.

Exclusion of evidence is proper where, although it may be technically relevant, it is remote or would cause confusion of issues. J. Weinstein, M. Berger, 1 *Weinstein's Evidence* par. 403[06], at 403–100,–01 (1990). Further, whether evidence should be excluded because its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury" rests largely in the discretion of the trial court. *Basin Electric Power Coop. v. Lang*, 304 N.W.2d 715, 717 (S.D.1981) (quoting SDCL 19–12–3). *Accord State v. Basker*, 468 N.W.2d 413, 415–16 (1991).[7]

*Zens I* held that statutory liability arises only in case "a highway *becomes* out of repair and does not arise when a highway is defectively birthed." *Zens I*, 386 N.W.2d at 478.[8] Contrary to Zenses' novel

---

7. SDCL 19–12–3 (1987) provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consid-

erations of undue delay, waste of time, or needless presentation of cumulative evidence.

8. Township's sole duty arose from its obligation to erect "substantial guards over [defects] ... of sufficient height, width, and strength to guard the public from accident or injury and to repair

argument, failure on the part of Township to condemn Railroad property is relevant to whether or not the ditch was defectively "birthed"; not to subsequent failures to repair. As such, the relevance of Township's ability to condemn property was questionable.

In addition, although Township may have had the *ability* to condemn railroad property to effectuate a wider ditch with a more gentle slope, SDCL 8–2–1(2) (1981), the feasibility of such an act was not certain. Prior to acquisition of any private land for highway purposes, the township board of supervisors must declare in a resolution the necessity of any such improvement. SDCL 31–13–33 (1984). Next, the board and the landowner must agree to the price for the land, or the matter must be submitted to a board of appraisers. SDCL 31–19–51 (1984). The board of appraisers' damage award is appealable to the circuit court, SDCL 31–19–53 (1984), where a jury trial may be required, SDCL 21–35–15 (1987). At the time the ditch was reconstructed, Railroad had planned to add an additional line to its tracks. The existence of that possibility may have so raised the value of Railroad's property as to have made acquisition of the Railroad's property impracticable.

These issues would have impeded this trial had the trial court admitted evidence of the township's ability to exercise its eminent domain power. The trial would have become a mini-condemnation proceeding. Instead, the trial court properly instructed the jury on Township's statutory duty. In light of the minimal relevance of the Township's condemnation power, and in light of the evidence's potential to confuse the jury, we cannot say the trial court abused its discretion in excluding evidence of Township's condemnation power.[9]

### III.

Finally, Zenses contend that the jury verdict was not supported by sufficient evidence. Whether a defendant breached its duty of care and whether that breach proximately caused the plaintiff's injuries are usually questions of fact to be decided by the jury. *Rumbolz v. Wipf,* 82 S.D. 327, 331, 145 N.W.2d 520, 522 (1966). "In cases where there is conflicting evidence and the trial court has denied a new trial, ... this court will not disturb the verdict for insufficiency of evidence. We can only reverse if there is no competent evidence to sustain the verdict." *Arbach v. Gruba,* 89 S.D. 322, 330, 232 N.W.2d 842, 846 (1975).

The jury was afforded an opportunity to hear all the testimony relating to the accident and the injuries suffered by Mr. Zens. They were able to judge the credibility of the witnesses, including both side's experts and the opinions they rendered. They could have believed the testimony of the passenger who claimed driver Lancaster was steering with one hand while cleaning the windshield with the other and his actions were the sole proximate cause of the accident. We conclude that the jury's verdict in this case is supported by sufficient evidence.

Judgment of the circuit court is affirmed.

[a highway which has been destroyed or has come out of repair] within a reasonable time thereafter." SDCL 31–32–10 (amended 1990); *Gulbranson v. Flandreau Tp.,* 458 N.W.2d 361, 362 (S.D.1990); *Zens I,* 386 N.W.2d at 477–78; *Lipp v. Corson County,* 76 S.D. 343, 346, 78 N.W.2d 172, 174 (1956). Zenses argue that by failing to exercise its power of eminent domain, Township breached its duty to effect "repairs" on the highway within a reasonable time after the highway "came out of repair" via Railroad's reconstruction of the ditch.

**9.** In connection with the trial court's refusal to admit evidence regarding Township's power of eminent domain, Zenses argue further that the trial court improperly instructed the jury regarding Railroad's duty to make its land available to Township for the construction of a wider, more gently sloping ditch. At the settlement conference, the trial court removed the offending language from the jury instruction, and, in addition, added a jury instruction at the Zenses's request which stated Railroad's duty not to create a defect or hazard in, or adjacent to, the public way. Zenses acquiesced to the resulting jury instructions. Zenses' objections were met by the trial court below and thus, Zenses have failed to preserve this issue for appeal. *See, Wildcat Cave, Inc.,* 261 N.W.2d at 116 (trial judge must be informed if possible so he may have the opportunity to correct the instructions).

MILLER, C.J., and HENDERSON and AMUNDSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

After the bus left the roadway, the driver was unable to steer back onto the roadway. The bus partially overturned in the ditch and Zens was injured.

Zens claims that the acts or omissions of the Railroad and the Township, in combination with the driver's negligence, caused or permitted the ditch to be reconstructed 18' to 20' closer to the roadway, at a depth of 9', with a nonrecoverable slope of 2:1. Zens proved that this reconstructed ditch did not comply with the A.A.S.H.T.O. standards that *then* existed and argues that it was reversible error to permit evidence of later standards to go to jury. I agree. See discussion in majority opinion towards end of Issue I, the cases cited therein and SDCL 19-16-22.

Zens was entitled to have the trial court instruct the jury that the Railroad and the Township were jointly and severally liable for his injuries, if their acts or omissions, in combination with the driver's negligence, produced Zen's injury.

[W]here the independent tortious acts of two [or more] persons combine to produce an injury indivisible in its nature, either tortfeasor may be held for the entire damage—not because he is responsible for the act of the other, but because his own act is regarded in law as a cause of the injury.

*Rowan v. Becker*, 73 S.D. 273, 41 N.W.2d 836, 839 (1950) (citations omitted). As established in *Zens I*, the railroad is liable if it created:

A hazard or defect in a public highway or appurtenant thereto, which could foreseeably cause or contribute to injury sustained by those using the public highway or reasonably straying therefrom.

*Id.* 386 N.W.2d at 479. Likewise, if the Township's failure to insist in 1973 that the Railroad reconstruct the ditch consistent with the existing road building standards is not sufficient to cause the roadway to come "out of repair," then the Township's own actions in 1978 when it retrenched the ditch caused it to come "out of repair." SDCL 31-32-10. *Zens I* at 478.

Considering these principles, it was error for the trial court to refuse evidence on the Township's authority to condemn property for construction of roads. SDCL 8-2-1. Aberdeen Township, like all townships, has the power to condemn property. SDCL 8-2-1 provides as follows:

Each organized township in this state is a body corporate and has power:

. . . .

(2) To acquire, by purchase, condemnation or other lawful means, rural property within or without the limits of the township, necessary or convenient for township purposes, or for the exercise of the powers granted to the township;

*See, Town of Emery v. Chicago, Milwaukee*, 35 S.D. 583, 153 N.W. 655 (1915); *Town of Andover v. Cooper*, 37 S.D. 258, 157 N.W. 1053 (1916). This refusal was especially prejudicial in connection with the trial court's instruction that:

You are instructed that an owner of private property (including the defendant Railroad) which adjoins a township highway right-of-way is not obligated to make part of his or its property available, to the Township for the construction of wider roads or wider ditches.

The eminent domain ruling and the private property instruction acted in concert to tell the jury that the space available in the Township's right-of-way would only permit construction of a ditch with a 2:1 slope. This was tantamount to a directed verdict for the Railroad and the Township and, as stated by Zens, "eviscerate[s] the Railroad's duty [under] *Zens I* not to create a hazard or defect in a public highway or appurtenant thereto." *Id.*

The majority opinion whitewashes this reversible error as non-prejudicial. I cannot do that. I would reverse and remand *again* for a fair trial.