No. 20,453.

JOE INTERMILL *v.* EVELYN M. HEUMESSER.
(391 P. [2d] 684)

Decided April 27, 1964.

Messrs. WHITE and STEELE, for plaintiff in error.

Mr. ALDEN T. HILL, Mr. RALPH H. COYTE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the parties as they appeared in the trial court which was inverse to the order of their appearance here. Plaintiff in error was the defendant and would by this writ of error seek to overthrow a jury verdict of $9021.18 for which amount the court entered judgment against him.

The injuries of which plaintiff complains were incurred in a rear-end collision. Plaintiff was stopped for a stop light at an intersection in Fort Collins, and defendant drove his automobile into the rear of her automobile causing what is typically known as a "whip lash" injury to the cervical spine in the vicinity of the neck.

Among errors claimed was the refusal of the trial court to direct a verdict in favor of the defendant on the asserted ground of unavoidable accident and the failure of the court to give the jury an instruction on unavoidable accident. His reason for this is based on the theory that the cause of the accident was the condition of the highway—not defendant's negligence.

It is conceded by all parties that at the time of the accident the streets in question were a glaze of ice and very slick. However, what the plaintiff and defendant did on the same street, under the same conditions, points up that it was not the condition of the street but rather how defendant drove that caused the collision, and that the accident was avoidable with proper care and caution.

The evidence shows that the plaintiff's car was considerably ahead of defendant's car as they were approaching the intersection. About a block away from the intersection the plaintiff said she looked in her rear vi-

sion mirror and noticed the defendant's car "way back." She said it was so slippery that she reduced the speed of her car to about 10 miles per hour and that when the light at the intersection turned to "caution" she was able to stop her car within two car lengths. That she did not slide into the intersection demonstrates a car could be controlled on the street. While she was properly stopped the defendant's car was either driven into or slid into the plaintiff's vehicle with such force that it propelled plaintiff's car into the middle of the intersection. From these physical facts the jury could determine that if plaintiff could stop her car so as to be clear of the intersection, defendant could have stopped also and was therefore not operating his car with due regard to all the hazards then existing. He was either driving at such speed as to be unable to stop or began to brake his car too late. The momentum was such as to propel plaintiff's car—which was dead still—into the middle of the intersection.

The question of defendant's negligence was properly placed before the jury, and we will not disturb the finding of the jury. *Lasnetske v. Parres,* 148 Colo. 71, 365 P. (2d) 250. On such facts the trial court could not have directed a verdict in favor of the defendant nor submit an issue of unavoidable accident to the jury. The giving of an instruction on unavoidable accident when there is no evidence on which such a finding could be based would be reversible error. *Carr v. Boyd,* 123 Colo. 350, 229 P. (2d) 659; *Herdt v. Darbin,* 126 Colo. 355, 249 P. (2d) 822; *Sullivan v. Laman,* 150 Colo. 542, 375 P. (2d) 92.

Defendant attacks the verdict on two grounds: (a) That the damages were not supported by the evidence and (b) that the verdict was excessive. As additional arguments under these points it is claimed that plaintiff's injuries were too speculative and were based on a pre-existing osteo-arthritic condition and not upon the accident.

Taking up first the pre-existing condition, the record

reveals ample testimony to establish that plaintiff had an arthritic condition but that it was aggravated by the "whiplash." She was without symptoms before the accident and had marked symptoms afterwards up to the date of the trial and would have them for an indefinite period in the future. One doctor said that she sustained "a sprain of the neck which so aggravated the pre-existing arthritic condition that it lead to swelling and hypertrophic bone formations or new bone formations of the joints and pinched [the] nerves that lead to the shoulders and arms for locomotive and sensory powers, where they come out from between the vertebraes in the neck." He gave his opinion that these symptoms related to the accident and that she will have neck pain and limitations indefinitely.

Other medical evidence offered was even stronger. For example, another doctor said that she had considerable damage to a degenerative arthritic neck; that he didn't think it was a minor or trivial problem but rather a major problem, and that the symptoms were due to a whiplash injury to her neck which damaged the vertebral bodies and the supporting ligaments. He attributed her reoccurring headaches to "the effort of the patient to splint the head or to hold the head with the neck muscles over a period of time creating a condition which results in a basal type headache." The plaintiff in her testimony described the snapping of the neck upon impact, stating her neck flipped back "as hard as it could go." We find no merit to the contention or speculation or to the claim that the evidence on damages does not support the verdict.

Complaint is made that the court permitted the use of certain x-rays of unidentified persons for purpose of illustration. In ruling on defendant's objection to the use of these the court said: "I will overrule the objection on the basis for which these are presented in evidence, the basis being that these are what the doctor considers as a normal neck, *for comparative purposes only.* So I

will overrule the objection." (Emphasis supplied.) The practice of using a skeleton or photographs or x-rays or plaster models is commonplace. An x-ray picture of a part of the body of a stranger to the action may be admitted to enable the jury to compare it with the abnormal condition shown on the picture of the plaintiff. 32 C.J.S. § 712. The practice of using these demonstrative aids should be encouraged since they give the jury and the court a clear comprehension of the physical facts, certainly much clearer than one would be able to describe in words. *Norland v. Peterson,* 169 Wash. 380, 13 P. (2d) 483; *Kelly v. Spokane,* 83 Wash. 55, 145 Pac. 57.

Defendant also objected to the admission of photographs of the plaintiff using a traction machine which she had testified was inadequate and not helpful in the treatment of her pain and symptoms. She testified over objection that the use of the machine caused her to wake up in the middle of the night bleeding from the nose and suffering from a stiff neck and swollen eyes. All of this, defendant claims, has no relation to injury, if any, caused by the accident, but was the fault of the physician. It was not error for the plaintiff to give the overall picture of her quest for treatment and relief and the difficulties encountered. Plaintiff testified that her physician had prescribed the use of the machine. By law she was required to submit to reasonable treatment and to follow the advice of a competent physician lest at the time of trial damages be denied her on the ground that she had failed to follow the advice of her physician and to minimize her damages. 15 Am. Jur., Damages, § 37. Evidence to show treatment prescribed which is not successful is no less competent by reason of it proving inadequate. Pain and suffering incident to medical treatment is a proper element of damage to be considered by a jury. 51 A.L.E. 1122, 15 Am. Jur., Damages, § 72.

Another point of error which defendant urges is that the court instructed the jury on violation of the city ordinance as being negligence per se but failed to add in

the same instruction that it must be proved that the violation was the proximate cause of the accident. This contention is without merit. The ordinances in Fort Collins require a driver, when special hazards exist, to *decrease speed;* command not to follow another vehicle more closely than reasonable with regard *to the condition of the streets;* admonish to drive in a prudent manner having *regard for the circumstances.* It appears from the evidence that the defendant violated the law, or at least that the jury could find from the evidence that he did so, and this is what caused him to crash into the back of plaintiff's car. The jury was given instructions Nos. 6 and 10 on proximate cause and were told by Instruction No. 12 that all instructions must be considered together. It is not necessary to repeat proximate cause in every instruction.

■ Finally, on the problem of separating plaintiff's complaints as to (a) those things which the arthritis caused and (b) those things which the accident caused, we have recently held in *Newbury v. Vogel,* 151 Colo. 520, 379 P. (2d) 811, as follows:

"We find the law to be that where a pre-existing diseased condition exists, and where after trauma aggravating the condition disability and pain result, and no apportionment of the disability between that caused by the pre-existing condition and that caused by the trauma can be made, in such case, *even though a portion of the present and future disability is directly attributable to the pre-existing condition,* the defendant, whose act of negligence was the cause of the trauma is responsible for the entire damage." (Emphasis supplied.)

The judgment is affirmed.

Mr. Justice Moore and Mr. Justice Pringle concur.