633 P.2d 410

**STATE of Arizona, Appellee,**

v.

**John Francis JESSEN, Appellant.**

No. 4982.

Supreme Court of Arizona,
In Banc.

July 29, 1981.

Rehearing Denied Sept. 11, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Bruce M. Preston, Deputy Public Defender, Phoenix, for appellant.

**STRUCKMEYER, Chief Justice.**

Appellant was convicted of first degree murder and sentenced to life imprisonment. He appeals. Reversed.

On August 6, 1979, appellant armed himself with a gun and went to the office of James P. Ameche, Manager of the Phoenix Branch of the Sigmatics Corporation, to resolve a pay dispute. A confrontation occurred which ended when appellant fired five shots, four of which hit Ameche, killing him. Appellant claimed self-defense, asserting he feared the victim because of his size and because he believed Ameche was a violent person and associated with organized crime. Appellant testified he exhibited the gun when it appeared Ameche was going to harm him and that he fired the gun as Ameche turned and went into his office because appellant thought he was going to get a gun. However, no weapon was found in the victim's office. An eyewitness, Melody Sikes, Ameche's secretary, contradicted the appellant's story in significant details.

Appellant complains that the trial court erred in denying his motion for mistrial or to strike Sikes' testimony because of alleged violations of discovery. Appellant's motion was predicated on these additional facts. A few days after the shooting, the prosecutor met with Sikes and reviewed the statement she had given the police the day of the homicide. The prosecutor took a page of notes during this meeting and, although the police report summarizing the eyewitness's statement was disclosed pursuant to Rule 15.1, Arizona Rules of Criminal Procedure, the notes were not disclosed. At appellant's trial, Sikes testified to the meeting with the prosecutor and that he took notes. She also revealed that she had informed the prosecutor at that meeting that the police report did not reflect her understanding of what had occurred with absolute accuracy. She testified:

"Q. You mean [the prosecutor] interviewed you then?

A. Yes. That's when I went over my statement with him, and that's when I reported to him that there were a lot of misconceptions, but I didn't know how important they were.

\*    \*    \*    \*    \*    \*

[The prosecutor] had a copy of the statement I had given to the police. And I had requested seeing that statement because during the period of time I was being interviewed by the officer, I kept having to correct him because he was not, you know, understanding what I was telling him."

Appellant's counsel did not interview this witness before trial. It is now argued that both *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Rule 15.1, Arizona Rules of Criminal Procedure, were violated when appellant was not informed prior to trial that the police report

**4**

did not reflect with exactness Sikes' understanding of what had occurred, and when the prosecutor failed to disclose the page of notes taken during his interview of Sikes.

■ Under *Brady v. State of Maryland*, supra, and its progeny, due process is violated when the prosecution suppresses, after a defense request to disclose, evidence favorable to the defendant which would have affected the jury's determination of guilt. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Talamante v. Romero*, 620 F.2d 784, 787–788 (10th Cir. 1980). While *Brady* is in a sense a rule of discovery, it is more correctly a rule designed to protect the right of a defendant to a fair trial. *United States v. Agurs*, supra, 427 U.S. at 107–114, 96 S.Ct. at 2399–2402; *United States v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978). The Court said in *Brady*:

> "The principle * * * is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *Brady v. Maryland*, supra, 373 U.S. at 87, 83 S.Ct. at 1197.

The test for a *Brady* violation is whether the undisclosed material would have created a reasonable doubt had it been presented to the jury. *United States v. Agurs*, supra, 427 U.S. at 112, 96 S.Ct. at 2402; see *Talamante v. Romero*, supra. When previously undisclosed exculpatory information is revealed at the trial and is presented to the jury, there is no *Brady* violation. *United States v. Alberico*, 604 F.2d 1315, 1318–1319 (10th Cir. 1979). Therefore, due process was not violated when the prosecution did not disclose the fact, which was disclosed at trial, that the police report did not reflect Sikes' statement with perfect exactness. This is true even though the pretrial nondisclosure may have affected appellant's trial preparation and strategy. *United States v. Agurs*, supra, 427 U.S. at 112, n. 20, 96 S.Ct. at 2401, n. 20; *United States v. Alberico*, supra. We also find no *Brady* violation in the non-disclosure of the notes since appellant failed to show any otherwise undisclosed information in them which would have affected the jury's verdict.

■ The disclosure required of the State under Rule 15.1, Arizona Rules of Criminal Procedure, is broader than the requirements of *Brady*. There may be violations of Rule 15.1, although arguably harmless, where there is no *Brady* violation. See *United States v. Agurs*, supra, 427 U.S. at 107–110, 96 S.Ct. at 2399–2400. Rule 15.1 does not require that a verbatim statement of a witness's testimony be given to an accused and the part of Sikes' testimony which was not accurately reflected in the police report was not "material or information which tends to mitigate or negate the defendant's guilt", Rule 15.1(a)(7), Arizona Rules of Criminal Procedure. See *State v. Williams*, 120 Ariz. 600, 587 P.2d 1177 (1978); *State v. Wallen*, 114 Ariz. 355, 560 P.2d 1262 (App.1977). Hence, we hold Rule 15.1 was not violated when appellant was not informed that the police report disclosed by the State did not exactly reflect Sikes' understanding of the events.

■ As to the non-disclosure of the notes of the interview, Rule 15.1(a)(1) requires the State to produce the "names and addresses of all persons whom the prosecutor will call as witnesses in the case-in-chief *together with their relevant written or recorded statements * * *.*" (Emphasis added.) Rule 15.4(a)(1)(iii) defines "statement" to include "a writing containing * * * a summary of a person's oral communications." These notes, while short and predominantly cryptic, do reflect what Sikes said to the prosecutor about the incident. The notes were a statement and should have been disclosed. *State v. Reid*, 114 Ariz. 16, 29–30, 559 P.2d 136 (1976); *State v. Nunez*, 23 Ariz.App. 462, 534 P.2d 270 (1975). "To rule otherwise would make a premium out of *not* taking verbatim statements in order to avoid the disclosure required by the rules." *Id.* at 463, 534 P.2d 270. (Emphasis in original.)

■ The choice of sanction or the choice of no sanction for a violation of disclosure is within the discretion of the trial court and will not be reversed on appeal absent a showing of prejudice. *State v. Lawrence*, 123 Ariz. 301, 599 P.2d 754 (1979). We note

that appellant does not contend there was anything in the notes which was not substantially disclosed prior to trial. Nor does he show prejudice by the non-disclosure.

Appellant urges that the prosecution improperly influenced the grand jury which investigated the shooting and the trial judge erred in denying a motion to remand for a redetermination of probable cause. He first complains that at the beginning of the grand jury's session, the jurors were instructed only on first degree murder. The record does not support this. The prosecutor introducing the case referred the grand jury to A.R.S. § 13–1101, which in part defines homicide as "first degree murder, second degree murder, manslaughter or negligent homicide." A.R.S. § 13–1101(2).

■ Appellant points to the fact that the grand jury was not instructed during the course of the investigation on the elements of different types of homicides or on potential defenses. No statute or rule requires the prosecution to frame instructions for each case under investigation. It is admitted that proper instructions were read to the grand jury a few days prior to the investigation of appellant's case.

■ It is argued that the prosecution slanted the evidence in favor of the State. As to this, the grand jury's function is not to determine the truth of the charges against an accused, but, rather, to determine whether there is probable cause to believe the accused committed a crime. *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *State v. Baumann*, 125 Ariz. 404, 610 P.2d 38 (1980). Hence, the accused has no right to testify. Nor does the prosecution need to present all the evidence, even that which is exculpatory, to the grand jury. *Id.*; see A.R.S. § 21–412. Courts generally do not concern themselves with the evidence underlying a grand jury indictment. *State v. Jacobson*, 22 Ariz.App. 128, 524 P.2d 962 (1974).

Appellant complains the prosecutor failed to show the grand jury that Ameche used obscene and offensive language toward appellant and attempted to physically confront him. He also complains that the reason for appellant's visit to Ameche's office was not introduced. These complaints not only fall within an area into which the court will not venture, but in this case are completely unfounded. All of these facts were presented to the grand jury.

It is also argued that when a detective was asked by a grand juror whether appellant might have had a reason to believe Ameche might use violence against appellant, the detective answered, "no", when he knew that appellant believed Ameche was associated with organized crime. But the appellant does not point to anything which would substantiate a charge that the detective knew appellant's belief when the detective testified to the grand jury.

■ Appellant's argument that the prosecution misled the grand jury as to its options at the end of the investigation by omitting that it could request readings from the law on other offenses or that it could request to hear the defendant's testimony is also without merit. The prosecution properly asked if the jurors had any legal questions, then advised them they could request more evidence or witnesses, end the proceedings or indict. We do not see any attempt to influence the grand jury in the prosecutor's failure to specifically mention that the appellant could be called to testify or that crimes other than murder might be involved. There is nothing in the record to suggest that the prosecution interfered with the independence of the grand jury. The trial court did not err in denying the motion to remand.

Appellant complains that certain rebuttal testimony concerning Ameche's character was erroneously admitted at trial. Appellant had testified in his case-in-chief that he believed the victim had a reputation for violence and that both the victim and the victim's company had a reputation for being associated with organized crime. In response to appellant's testimony concerning Ameche's character, the State elicited, over objection, the following testimony from Detective Quaife of the Phoenix Police Department:

**6**

"Q. Detective Quaife, let me ask you, in answer to the question—yes or no—whether you have an opinion as to the reputation and character of Mr. Ameche in reference to him being associated with or being mafia or organized crime?

A. Yes.

Q. Detective, would you explain how you arrived at this opinion?

A. I have contacted Detective Andy Watsik of organized crime bureau of the Phoenix Police Department. I have given him the name of James Peter Ameche and Mr. Ameche's birth date. I have asked him to check for me to determine if Mr. Ameche had any affiliation whatsoever with organized crime or the mafia.

Q. In reference to Mr. Watsik, who is he?

A. He is a detective with the Phoenix Police Department in the organized crime bureau.

Q. And when you say in the organized crime bureau, does he work exclusively with organized crime?

A. I believe it's exclusively with it, yes, sir.

Q. Have you had any other individual check this out, any other detectives over there?

A. Yes.

Q. And who was that?

A. Detective Miller.

Q. And who is Detective Miller?

A. He is also a detective with the Phoenix Police Department, in the organized crime bureau.

Q. Have you yourself done anything in addition?

A. Yes.

Q. And what is that?

A. I checked the name of Mr. Ameche—James Ameche through the records bureau of the Phoenix Police Department for any type of criminal record.

Q. Did you run any N.C.I.C. records check, or is that what you are talking about?

A. That's what is done by the I. Bureau technician at the time.

Q. Based upon your investigation, what is your opinion as to the reputation and character of Mr. Ameche in reference to him being organized crime or mafia connected or associated?

A. My opinion is that he is not or was not."

Appellant complains Detective Quaife's opinion was inadmissible hearsay. See Rules 801(c) and 802, Arizona Rules of Evidence.

The recent case, *State v. McVay*, 127 Ariz. 450, 622 P.2d 9 (1980), presented a similar question. There the defendant's cellmate testified to certain admissions by the defendant. To rebut an inference of fabrication, the State called a detective who testified he confirmed the truthfulness of the cellmate's story by contacting out-of-town police authorities. We held the detective's testimony was hearsay.

"The testimony of Detective Klettlinger, in effect, was a statement as to what the authorities in Pima County and California told him about defendant's conduct after the murder. The authorities from Pima County and California were not available for cross-examination. What they actually said to Detective Klettlinger would be hearsay and would be inadmissible as such. The effect of Detective Klettlinger's testimony was to bring these same hearsay statements into evidence in the form of Detective Klettlinger's opinion. As such, Detective Klettlinger's opinion was subject to the hearsay objection and was erroneously admitted." *Id.* at 453, 622 P.2d at 12.

However, Rule 703, Arizona Rules of Evidence, provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied

upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

The State argues Detective Quaife as a police officer relies on the information contained in the police files and computers, hence he can give an expert opinion on the victim's character or reputation based on inadmissible hearsay.[1] But we do not think so. He is not an expert simply because he has a source of generally reliable information and customarily acts on it. A person is an expert who can express an opinion when he has skill, experience or knowledge in a particular field. *McKee v. Aetna Life Insurance Company*, 423 F.2d 623 (6th Cir. 1970); *Bridger v. Union Railway Company*, 355 F.2d 382, 387 (6th Cir. 1966); see Weinstein's Evidence, ¶ 702[01]; see also Rule 702, Arizona Rules of Evidence. Detective Quaife may have certain expertise in law enforcement, but there is no testimony from which it can be concluded that he had special skills or experience by which he could reliably determine reputation and character from facts integrated into police files and computers. He could not be considered an expert witness as to Ameche's character or reputation. See *McKee v. Aetna Life Insurance Company*, supra.

It is also clear Detective Quaife's testimony was not admissible as a lay opinion of the victim's character or reputation. See Rules 405(a), 701 and 803(21), Arizona Rules of Evidence. Reputation is the opinion generally held about a person by associates or by the community at large. *State v. Blake*, 157 Conn. 99, 249 A.2d 232, 235 (1968); 5 Wigmore, Evidence §§ 1608–1615; 4 Weinstein's Evidence, page 803–50; see also Rule 803(21), Arizona Rules of Evidence. In reaching his "opinion" as to Ameche's reputation for involvement with organized crime, Detective Quaife contacted

only two other persons, neither of whom knew Ameche or about him. Viewed in this light, Detective Quaife's testimony was not an opinion based on personal knowledge as to Ameche's character or reputation; rather, it was a statement of information known to or gathered by others not subject to cross-examination. This case does not differ from *State v. McVay*, supra. Detective Quaife's testimony was inadmissible hearsay.

The error was not harmless. Appellant's justification for the homicide was self-defense. By A.R.S. § 13–405:

"A person is justified in threatening or using deadly physical force against another:

\*     \*     \*     \*     \*     \*

2. When and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force."

The question that the jury had to resolve was not whether Ameche was involved in organized crime and a violent person, but whether the appellant believed Ameche was involved with organized crime and, as such, was a violent person. The question was the reasonableness of the appellant's asserted belief that he feared Ameche and believed that deadly physical force was immediately necessary to protect himself against him. The test of reversible error "is whether there was reasonable probability under such facts that a verdict might have been different had the error not been committed." *State v. McVay*, supra at 453, 622 P.2d at 12. Here, Detective Quaife's testimony would tend to convince the jury that there was no reasonable basis for appellant's belief. We cannot say that beyond a reasonable doubt the jury would have found the appellant guilty had Detective Quaife's testimony concerning Ameche's reputation and character not been admitted into evidence.

---

1. Even if otherwise inadmissible hearsay underlying an expert opinion is introduced into evidence, it has only "the limited purpose of disclosing the basis for the opinion \* \* \*." Comment to Rule 703, Arizona Rules of Evidence. The hearsay underlying the expert opinion has no substantive value. *Hickok v. G. D. Searle & Company*, 496 F.2d 444, 447 (10th Cir. 1974).

■ Appellant testified that Ameche had a reputation for violence and association with organized crime. He complains that two rebuttal witnesses were erroneously allowed to testify about Ameche's reputation for non-violence and lack of association with organized crime. Both witnesses testified not to Ameche's reputation, but, rather, to their opinions concerning the victim's character traits. Lay opinion testimony was a proper method to disprove the victim's character traits which the appellant had attempted to prove with reputation evidence. See Rules 405(a) and 701, Arizona Rules of Evidence.

Appellant assigns as error the court's refusal to give three proposed instructions. The argument concerning two of these instructions can be quickly resolved.

■ In objecting to the refusal of appellant's proposed instruction No. 2, appellant's counsel failed to specify why the refusal of the instruction was error. A general objection waives the matter on appeal. *State v. Schilleman*, 125 Ariz. 294, 298, 609 P.2d 564 (1980); Rule 21.3(c), Arizona Rules of Criminal Procedure.

■ The refused instruction No. 12 does not appear in the record on appeal. It was the responsibility of appellant's counsel to ensure that any document necessary to his client's argument was in the record on appeal. See *State v. Miller*, 120 Ariz. 224, 585 P.2d 244 (1978). We will not speculate on the contents of the proffered instruction. We find no error. *State v. Lujan*, 124 Ariz. 365, 370, 604 P.2d 629 (1979).

The court also refused appellant's instruction to the effect that he had no duty to retreat before he could justifiably use deadly physical force in self-defense. However, the jury was instructed on self-defense:

"A person is justified in using deadly physical force against another when and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful, deadly physical force.

\*      \*      \*      \*      \*      \*

Self-defense justifies the use of force only while the apparent danger continues. The right to use force in self-defense ends when the apparent danger ends. Actual danger is not necessary to justify the use of force in self-defense. It is enough if the person reasonably believed he was in physical danger."

Under the common law, a person faced with the threat of deadly force was required to retreat as far as possible before defending with similar force. If the defender did not retreat, self-defense was precluded *as a matter of law*. 1 Wharton, Criminal Law & Procedure § 235 (1957); see *Beard v. United States*, 158 U.S. 550, 560–564, 15 S.Ct. 962, 965–967, 39 L.Ed. 1086 (1895); *Boykin v. People*, 22 Colo. 496, 45 P. 419, 422 (1896). This Court rejected this requirement even before Arizona became a state. In *Foster v. Territory*, 6 Ariz. 240, 56 P. 738 (1899), a conviction was reversed where the jury was instructed that there was no self-defense if the defendant could have withdrawn but did not. *Foster* was reaffirmed in *State v. Jackson*, 94 Ariz. 117, 382 P.2d 229 (1963).

In recently redrafting the criminal code, the Legislature codified the law concerning the use of deadly force in self-defense. A.R.S. § 13–405 provides:

"A person is justified in threatening or using deadly physical force against another:

1. If such person would be justified in threatening or using physical force against the other under § 13–404, and

2. When and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force."

A.R.S. § 13–404(B) provides:

"The threat or use of physical force against another is not justified:

1. In response to verbal provocation alone; or

2. To resist an arrest that the person knows or should know is being made by a

peace officer or by a person acting in a peace officer's presence and at his direction, whether the arrest is lawful or unlawful, unless the physical force used by the peace officer exceeds that allowed by law; or

3. If the person provoked the other's use or attempted use of unlawful physical force, unless:

(a) The person withdraws from the encounter or clearly communicates to the other his intent to do so reasonably believing he cannot safely withdraw from the encounter; and

(b) The other nevertheless continues or attempts to use unlawful physical force against the person."

The statutes are in accord with *Foster v. Territory*, supra, and *State v. Jackson*, supra. They do not require retreat where possible as a legal predicate to self-defense. See Gerber, Criminal Law of Arizona, page 55 (1978). But it is clear that under A.R.S. § 13–405 the fact that a possibility of retreat was known to the defendant and was not used "is a circumstance to be considered with all the others in order to determine whether the defendant went farther than he was justified in doing", *Brown v. United States*, 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961 (1921), or in different terms, whether "a reasonable person would believe that deadly physical force is *immediately necessary* * * *." A.R.S. § 13–405 (emphasis added); see *Gillis v. United States*, 400 A.2d 311 (D.C.1979).

Appellant argues that in *State v. Jackson*, supra, we found error when the trial judge refused to instruct that the law in Arizona does not require retreat. But we have said:

"The appellant * * * complains of the trial court's refusal to give certain requested instructions. Essentially these instructions relate to the law of self-defense. The principles embodied in them were fully covered by the court's instructions on self-defense. The trial court should exercise caution in not emphasizing a particular part of a case out of proportion to the whole. *State v. Jack-*

*son*, 94 Ariz. 117, 382 P.2d 229 (1963). It was not incumbent upon the court below to reiterate, enlarge or couch the law applicable in appellant's language where the jury was fully and correctly otherwise instructed." *State v. Barker*, 94 Ariz. 383, 388, 385 P.2d 516 (1963).

 The trial judge correctly defined the law in giving an instruction based on A.R.S. § 13–405. This statute does not require retreat as a legal predicate to self-defense. The jury being correctly and fully instructed, there was no error in the court's refusal to "reiterate, enlarge or couch the law applicable in appellant's language * *." *State v. Barker*, supra.

Judgment of conviction reversed.

HOLOHAN, V. C. J., and HAYS, CAMERON and GORDON, JJ., concur.