774 P.2d 1366

**STATE of Arizona, Appellee,**

v.

**Robert Abril MONTIJO, Appellant.**

No. 2 CA–CR 87–0510.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 31, 1989.

Review Denied July 11, 1989.[*]

---

* Corcoran, J., of the Supreme Court, was not present and did not participate in the determination of this matter.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Crane McClennen, Phoenix, for appellee.

Harold L. Higgins, Pima County Public Defender by Frank P. Leto, Tucson, for appellant.

## OPINION

LIVERMORE, Presiding Judge.

Defendant killed Alex Torres, was charged with first-degree murder, argued self-defense, and was convicted of negligent homicide. The prosecution relied on the nature of the wounds and the three conflicting statements of the defendant. The defense relied on the defendant's testimony, his good character, and the aggressive, violent, and turbulent character of the decedent. Defendant raises five issues on appeal. We affirm.

■ Defendant first contends that the trial court erred in failing to give the following requested instruction:

You are further instructed that the defendant's knowledge of the [deceased's] violent and turbulent disposition would have a bearing on the defendant's state of mind and the reasonableness of his

belief that he was in personal danger at the time of the killing.

In our view this instruction does no more than state the legally correct proposition that a person's knowledge of another's violent character may cause reasonable fear from conduct more quickly than if one knew nothing of that other person's character. Put another way, knowledge is relevant to belief and the reasonableness of that belief.

While *State v. Singleton*, 66 Ariz. 49, 182 P.2d 920 (1947), appears to require that such an instruction be given, if requested, we believe that holding was silently overruled in *State v. Jessen*, 130 Ariz. 1, 633 P.2d 410 (1981). There, the defendant requested an instruction that retreat was not required in order to claim self-defense. Such an instruction had been mandated by *State v. Jackson*, 94 Ariz. 117, 382 P.2d 229 (1963). The *Jessen* court held that a general instruction on the components of self-defense was sufficient and that it was not necessary to emphasize a particular aspect of the case in defendant's language. *See also State v. Barker*, 94 Ariz. 383, 385 P.2d 516 (1963); *State v. Earby*, 136 Ariz. 246, 665 P.2d 590 (App.1983). What was said in *Jessen* with respect to the previously required retreat instruction is equally applicable to the instruction concerning the relevance of decedent's known character to the reasonableness of defendant's belief in the need for self-defense. This is particularly so because an instruction concerning one class of evidence runs the risk of being considered an impermissible comment on the evidence. *See Public Service Co. v. Bleak*, 134 Ariz. 311, 656 P.2d 600 (1982).

■ Defendant next argues that the trial court erred in limiting his counsel's cross-examination of the pathologist by refusing to allow counsel to show photographs from a learned treatise to the jury during cross-examination. We reject this argument. First, counsel was allowed to inquire about the photographs and explore why the wounds in this case did not correspond with the photographs. The ability to present to the trier the theory that the pathologist had mischaracterized the wounds was not impaired. Second, the right to cross-examine is limited to that which is relevant. *State v. Schrock*, 149 Ariz. 433, 719 P.2d 1049 (1986). What one kind of wound looks like on another person is not particularly probative of what another kind of wound should look like on decedent. Finally, the photographs were not made part of the record and we are in no position to find that the trial court abused its discretion in preventing them from being shown to the jury on the ground that they would likely mislead. *See* Ariz R.Evid. 103(a)(2), 17A A.R.S.

■ Defendant's third argument is that the trial court erred in precluding a "psychiatric autopsy" performed by an expert. On the basis of examining police reports, talking to people who knew decedent, and reading witness statements about the incident, the expert concluded:

The diagnostic formulation would be:

> *Anti-social personality disorder, DSM–III–R, 310.70*

with irresponsible, anti-social behavior beginning in childhood or early adolescence, continuing into adulthood. Conduct disorder was present before the age of 15.

The anti-social pattern in adulthood includes:

> failure to honor financial obligations
>
> failure to function as a responsible parent
>
> inability to sustain consistent work behavior
>
> repeated anti-social acts, with grounds for arrest
>
> irritability
>
> aggressiveness
>
> given to marked mood swings
>
> occasional sudden change of temperament with poor impulse control
>
> sexual promiscuity without remorse of effects of his behavior on others
>
> use of alcohol, Marijuana and Cocaine

"People with this disorder are more likely than people in the general population to die prematurely by violent means." Pre-disposing factors are:

> attention deficit/hyperactivity disorder

conduct disorder in childhood and adolescence

Considering the pre-existing conduct disorder, the attention deficit/hyperactivity disorder and the antisocial personality disorder, one must mention that we are dealing with a person:

of low self esteem

socioeconomically somewhat deprived

the last child of a very large and poor family

handicapped by a very poor scholastic and achievement record

according to his girlfriend's (mother to his child) statements—he was a despondent, depressed person, who did not want to live anymore

thus, self destructive tendencies although he was not able or willing to commit suicide, at least not to our knowledge

Mr. Torres had a low frustration threshold and, on the night of his demise, he had been consuming Cocaine which probably further complicated his disturbed and distressed mental condition. In addition, by many witnesses statements, he had been consuming alcohol all day and thus his depression, aggravated by consumption of these two substances became out of control.

Alex Torres died at age 20, a violent death. His date of birth was April 3, 1966; date of death was August 10, 1986. The post-mortem examination revealed several stab wounds, blunt force trauma and Cocaine on nasal swab as well as in the blood.

This young man's history from infancy is replete with serious psychological disturbances. He manifested behavioral problems quite early, attended special education classes, had a *borderline low IQ* of approximately 70. In addition to his learning problems, poor attention span, distractability and motor hyperactivity, he also manifested conduct disturbances. He was very frequently absent from school, had to be disciplined, often without much success, and, later, began to steal repeatedly, began to drink beer, later Marijuana and finally Cocaine.

Alex Torres was sexually aggressive. He was found guilty of *child molestation,* playing with his little niece, sexually.

He was sexually promiscuous, contracted gonorrhea, then did not tell his steady girlfriend about his infection, thus endangering her. He impregnated her when she was only 16 years of age, and, apparently, was extremely aggressive in his conduct towards her. While he never actually raped her, he came close to that in forcing himself upon her.

He would not desist from appearing at her house at all hours of the night, showed no consideration for the feelings or comfort of others and became more and more obnoxious as he grew older. He apparently was not able to hold a permanent employment position as he showed himself as completely unreliable. His severe mood changes, as corroborated by almost everyone who knew him, occasionally, especially during his final hours of life, appeared to have taken extreme proportions causing a true rage reaction.

Mr. Torres was at times aware of his unworthiness and made self-deprecatory remarks including death wishes, considering himself, with a certain degree of insight, a useless and unworthy person. His reckless involvement in a fight with the brother of his girlfriend may well have been the result of his unconscious death wish, being expressed to his girlfriend, repeatedly, but very intensely the night of his demise.

It is this type of individual who dies prematurely by provoking his own death. Mr. Torres carried weapons, "most of the time" and was quite capable and even likely to evoke fear and counter protective actions in others.

It is not difficult to state that if this man would have lived, he would have progressed to further substance abuse, further acts of an anti-social nature and, with great likelihood, further criminal activities and arrests.

Mr. Torres' extreme "jealousy" was one of the character traits which predisposed

him towards his final demise as was his *uncontrollable rage* and his apparent death wishes.

The prosecution's motion to preclude was premised on the twin grounds that the proposed testimony was not a proper subject of expert testimony and that the technique employed was not generally accepted as valid in the scientific community. The trial judge granted the motion on the latter ground. Because psychiatrists have not infrequently been allowed to testify concerning human motivation, we do not address the ground on which the trial court based its decision. We do hold that preclusion was appropriate because the proposed testimony was not a proper subject of expert testimony.

In a series of cases our supreme court has distinguished between general information about a character or behavioral trait and a particularized opinion about how that trait was manifested in the case at trial. *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986) (how conduct should be judged in determining whether a child molestation victim is credible as opposed to whether this victim is telling the truth); *State v. Hicks*, 133 Ariz. 64, 649 P.2d 267 (1982) (alcoholic character trait as opposed to how that trait influenced the defendant during the crime); *State v. Christensen*, 129 Ariz. 32, 628 P.2d 580 (1981) (trait of impulsivity as opposed to whether defendant was acting impulsively and without reflection at the time of the crime). The psychiatric autopsy in this case far transgressed this line. It sought to inform the trier not only about decedent's character but what decedent did and why he did it on the night of his death. It was properly rejected. As put in *State v. Moran*, 151 Ariz. at 383, 728 P.2d at 253:

> When the only evidence consists of the victim's accusation and the defendant's denial, expert testimony on the question of who to believe is nothing more than advice to jurors on how to decide the case. Such testimony was not legitimized by Rule 704 [Ariz.R.Evid., 17A A.R.S.], and is not admissible under Rule 702 [Ariz.R.Evid., 17A A.R.S.]. The same principle applies to expert opinion

testimony on whether the crime occurred, whether the defendant is the perpetrator, and like questions.

To this we would add that much of the psychiatric autopsy should have been excluded on the ground that it was unduly prejudicial as being designed primarily to show that the decedent was a bad man richly deserving of death and that whatever defendant's motivation in killing him, he performed a public service.

Defendant seeks to avoid this analysis by arguing that some of the psychiatrist's opinions would be admissible to show the decedent's aggressive character under Ariz.R.Evid. 404(a)(2), 17A A.R.S. That argument was not presented to the trial judge. The autopsy was offered as a whole to show that decedent "precipitated the act or brought this act upon himself." "Where evidence is not admissible for the purpose for which it is offered, it is proper to exclude it even though there existed a valid, but not stated, purpose for which it could have been received." M. Udall & J. Livermore, *Arizona Practice: Law of Evidence* 22 (2d ed. 1982). The trial court was not required to sift through the largely inadmissible psychiatric autopsy to find those portions that might be admissible had counsel sought to offer them in that way.

■ Defendant's fourth argument is that he was denied due process when his motion to preserve the body of the decedent for examination by a defense pathologist was denied. The motion gave no reason for the request. It was denied and the decedent was buried. Even at this late date there is no evidence offered to show why the body was exculpatory evidence. Without that, there is no denial of due process. *State v. Tucker*, 157 Ariz. 433, 759 P.2d 579 (1988). *See also Arizona v. Youngblood*, —— U.S. ——, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). We are unwilling to impose an obligation on the state to preserve dead bodies simply on the speculation that further examination might prove useful. A careful post-mortem was performed and pictures were taken of the wounds. Any physical evidence, therefore,

was available to the defendant. No prejudice has been established.

 Finally, defendant argues that the trial court should not have imposed an aggravated sentence. That matter lies entirely within the discretion of the 'trial court absent abuse. Proper aggravating factors were present in this case; that the trial judge did not find mitigating factors sufficient to offset these does not demonstrate an abuse of discretion. *See State v. Willcoxson*, 156 Ariz. 343, 751 P.2d 1385 (App. 1987); *State v. Cawley*, 133 Ariz. 27, 648 P.2d 142 (App.1982).

AFFIRMED.

HATHAWAY and HOWARD, JJ., concur.