1996 SD 108

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Timothy HENRY, Defendant and Appellant.**

No. 19184.

Supreme Court of South Dakota.

Considered on Briefs March 13, 1996.

Decided Aug. 28, 1996.

Mark Barnett, Attorney General, Tony L. Portra, Assistant Attorney General, Pierre, for plaintiff and appellee.

Robert L. Spears, Spears Law Office, Watertown, for defendant and appellant.

SABERS, Justice.

[¶ 1] After two jury trials resulting in hung juries, Henry was convicted of two counts of first-degree rape and three counts of second-degree rape. Henry appeals. We affirm.

**FACTS**

[¶ 2] Timothy Henry (Henry) lived with his wife, Vicki Clark, their son, and her son in Henry, South Dakota. Vicki's son was born in September 1981, before she met Henry. Vicki and Henry were married in November 1983. Their son was born in February 1985.

[¶ 3] On August 4, 1993, Henry and the two boys were working on a car when Henry found a letter written by Vicki to another man. He confronted her with it and an argument ensued. Vicki left the house sometime after midnight. She called the sheriff and officers took her and the two boys to a women's shelter.

[¶ 4] Henry secured a court order for temporary custody of the boys and Vicki was informed of the order. Before Henry obtained custody, the boys were playing in the basement of the shelter and told each other for the first time that Henry had been sexually abusing them. They told their mother, who called a representative of the Department of Social Services to interview the boys. The boys alleged Henry sodomized them at their family home. The abuse apparently started when the older boy was four or five years old, while the family was living in Texas. One of the boys testified he was forced to perform fellatio on Henry at least once a week after the family moved to South Dakota in the spring of 1993.

[¶ 5] At trial, the State presented expert testimony from Dr. Clark Likness, who examined the boys on three occasions, August 9, 1993, July 29, 1994, and February 6, 1995. The doctor testified that his first physical examination revealed the boys' rectal vaults were loose and dilated, which was unusual. He also stated the boys had a medical condition known as funneling, where the rectal vault appears wider on the outside and narrows farther into the rectum, like a funnel. Dr. Likness stated the sphincter muscle tone around the rectal area was very loose and very dilated. The boys also exhibited thickened rugi, which are skin folds around the rectum, and redness in their rectums. He testified that in his opinion the boys had been sexually abused. He related the accounts of abuse told by the boys as well as his physical findings from the examinations. His second and third examinations revealed a tightening of the muscles in the rectum, less redness and, in one of the boys, the funneling was no longer present.

[¶ 6] Henry was allowed to cross-examine Dr. Likness about whether funneling, thickened rugi, or redness of the rectum are compatible with conditions other than sexual abuse. He answered "yes" to each.

[¶ 7] Henry's expert, Dr. Robert Fay, stated that the examining doctor's conclusions were erroneous because they were based on symptoms also exhibited by nonabused children. He did not physically examine the boys but examined Dr. Likness' medical reports. Dr. Fay testified that the amount of dilation of the boys' rectums was present in many children. He stated the finding of thickened rugi was "non-specific" and could be found in children who have other conditions and in children who are not abused. He also stated funneling has been "dismissed" as a physical finding regarding sexual abuse because it has been found to be unreliable and because it is present in nonabused children. He also testified that Dr. Likness' findings were compatible with "a child who has had repetitive bowel problems of a constipation nature."

[¶ 8] Although two prior jury trials resulted in hung juries, Henry was convicted at the third trial. He was sentenced to life imprisonment for each of the first-degree rape convictions and twenty-five years for each of the second-degree rape convictions. Henry appeals.

[¶ 9] **Whether the exclusion of a photograph from a manual on child sexual abuse constituted an abuse of discretion and resulted in prejudicial error.**

■ [¶ 10] Henry claims the trial court erred when it refused to admit a photograph from a manual on child sexual abuse. Evidentiary rulings of the trial court are reviewed under an abuse of discretion standard. *People in Interest of A.R.P.*, 519 N.W.2d 56, 62 (S.D.1994) (citing *Zens v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 479 N.W.2d 155, 159 (S.D.1991)). "For us to disturb the evidentiary rulings of the circuit court, we must determine that an abuse of discretion has occurred. [A]n abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Id.* (quoting *State v. Moriarty*, 501 N.W.2d 352, 355 (S.D. 1993); *State v. Devall*, 489 N.W.2d 371, 374 (S.D.1992)).

■ [¶ 11] Dr. Likness' first examination revealed funneling. While he did not take photographs of the boys' first anal examination, he testified that a black-and-white drawing of the rectum of a sexually abused child, which was photocopied, represented his findings. Across the bottom of the photocopied page was printed: "Chronic abuse results in loss of sphincter tone and patulous anus." According to Dr. Likness, the drawing was from the book *Clinical Symposia*, distributed by the Ciba–Geigy Company. The drawing was received in evidence as Exhibit 2 over Henry's objection. The trial court stated, "This exhibit is for illustrative purposes only and whether it's consistent with what the physician has found is a jury question and they can take that into consideration along with all the other evidence."

[¶ 12] Henry's counsel cross-examined the doctor and attempted to introduce Exhibit Z, an enlargement of a picture from *The Color Atlas of Child Sexual Abuse*, which showed the presence of funneling in a nonabused child. The trial court held that the picture

could not be received into evidence because the point could be made without the use of Exhibit Z. Initially, we note that the trial court's reason for excluding the photo—that "you can [make the point] by asking those questions, you don't need a picture showing it"—is not a proper reason for exclusion. The trial court also stated, "the danger you have [with Exhibit Z] is standing up in front of that jury with a blowup and saying these kids have not been sexually abused because the pictures don't match ... that's the danger, it's confusing to the jury and I think it's prejudicial[.]"

[¶ 13] In making this statement, the trial court misstated the argument of the defense, which more correctly would be based on the claim that the pictures did match, therefore no sexual abuse existed. Second, that this argument might prejudice the State's claim of sexual abuse is neither improper nor "confusing," but possibly enlightening.

[¶ 14] Exhibit Z was made a part of the record on appeal when Henry's counsel moved to include a copy via stipulation and agreement with the Codington County Deputy State's Attorney. Based on SDCL 23A–32–17, which provides, in part, "after the appeal is perfected the attorney general shall otherwise control the case in behalf of the state, and thereafter no stipulation shall be valid unless made in writing with the attorney general[,]" a representative of the Attorney General's Office refused to sign the stipulation and agreement. However, based on the stipulation and agreement, this court voted to include Exhibit Z in the record.

[¶ 15] Henry claims Exhibit Z would have been admissible during the cross-examination of Dr. Likness or during the testimony of his expert, Dr. Fay. State does not respond to the latter assertion because it claims Henry did not offer the exhibit during Dr. Fay's testimony. However, the stipulation and agreement provides:

> The parties ... agree and stipulate that defense Exhibit Z was the subject of an off the record bench conference at trial transcript page 736 wherein the trial judge ruled that certain questions regarding the Bays and Chadwick article would be permitted, but the Judge would not allow the

defense to introduce Exhibit Z holding that he ruled on that the day before and it was inadmissible ...

> [T]he parties hereby agree that is the sequence of events concerning the trial transcript from pages 736 to 741 and there was in fact an attempt to introduce Exhibit Z into evidence while Dr. Robert Fay was on the stand.

(Emphasis added.)

[¶ 16] Henry claims the picture should be admitted under the same standards as a photograph. Photographs are generally admissible if they accurately portray something which a witness is competent to describe in words or where they are helpful to aid the verbal description of objects and conditions and are relevant to a material issue. *Sommervold v. Grevlos*, 518 N.W.2d 733, 736 (S.D.1994). SDCL 19–18–1 defines "photographs" as "still photographs, x-ray films, video tapes, and motion pictures." Exhibit Z is not a photograph of the victim or the scene in this case. "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided[.]" SDCL 19–18–2. Exhibit Z is not an original photograph but a photograph reproduced in a manual.

[¶ 17] Generally, manuals would be subject to a hearsay objection because the writer is not available for cross-examination but SDCL 19–16–22 provides an exception for learned treatises. *Schrader v. Tjarks*, 522 N.W.2d 205, 212 (S.D.1994). SDCL 19–16–22 provides in part:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of ... medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness ... are not excluded. [I]f admitted, the statements may be read into evidence but may not be received as exhibits.

A "statement" is defined as "an oral or written assertion or ... nonverbal conduct of a person, if it is intended by him as an asser-

tion." Exhibit Z is from a section of the manual which shows nonabused children. The statement implied in Exhibit Z is that it is a nonabused child. The picture and that information make Exhibit Z a statement, admissible under SDCL 19–16–22. If its admissibility depended only upon SDCL 19–16–22, Exhibit Z would not be allowed to accompany the jury in its deliberations based on *Zens*, 479 N.W.2d at 159, but Exhibit Z is also relevant demonstrative evidence.

[¶ 18] The Supreme Court of Colorado addressed similar demonstrative evidence in *Intermill v. Heumesser*, 154 Colo. 496, 391 P.2d 684 (1964). In *Intermill*, the plaintiff was attempting to show a neck injury from a car accident. The trial court permitted x-rays of unidentified persons to be used for illustration purposes, to show "normal" neck x-rays. The *Intermill* court stated: "An x-ray picture of a part of the body of a stranger to the action may be admitted to enable the jury to compare it with the abnormal condition shown on the picture of the plaintiff." *Intermill*, 391 P.2d at 686 (citing 32 CJS Evidence § 712). "The practice of using these demonstrative aids should be encouraged since they give the jury and the court a clear comprehension of the physical facts, certainly much clearer than one would be able to describe in words." *Id.* (citing *Norland v. Peterson*, 169 Wash. 380, 13 P.2d 483 (1932); *Kelly v. City of Spokane*, 83 Wash. 55, 145 P. 57 (1914)). In this case, Exhibit Z would have provided a much clearer picture of the similarities of symptoms which resulted from sexual abuse according to Dr. Likness, and those exhibited by a nonabused child.

[¶ 19] Henry claims the State raised the issue of funneling through Dr. Likness' testimony and he should have been allowed to ask Dr. Likness "if he could describe what defendant's Exhibit 'Z' is and how Exhibit 'Z' compared to" a photograph of one of the boys' examinations. State claims Henry was able to prove his point by cross-examining Dr. Likness and gaining his admission that funneling is consistent with things other than sexual abuse. Therefore, State argues that Exhibit Z was not relevant.

[¶ 20] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1; *State v. White*, 538 N.W.2d 237, 242 (S.D.1995). When the drawing with the statement regarding "chronic sexual abuse" was admitted as Exhibit 2, the trial court stated the jury could decide whether the drawing was consistent with Dr. Likness' findings. Exhibit Z challenges the findings of Dr. Likness and would assist the defense in disproving sexual abuse since it was similar to the photograph of the examination. Therefore, it meets the conditions of relevant evidence.

[¶ 21] After having exercised its discretion to allow the State to use Exhibit 2, the trial court exercised its discretion and did not allow Henry to use Exhibit Z. This was an exercise of discretion "to an end or purpose ... clearly against reason and evidence." *In re A.R.P.*, 519 N.W.2d at 62. *But see State v. Montijo*, 160 Ariz. 576, 774 P.2d 1366, 1368 (App.1989), where an Arizona appellate court affirmed a conviction for negligent homicide despite similar claims of error. On the bases of relevancy and the belief that words were sufficient, the court rejected claims of improper limitation of cross-examination of a pathologist by refusing to allow counsel to show the jury photographs from a learned treatise.

[¶ 22] State claims Henry was not prejudiced by the trial court's abuse of discretion. Henry must show prejudicial error, which is error " 'that which in all probability must have produced some effect upon the final result and affected rights of the party assigning it. It is error 'without which the jury would have probably returned a different verdict'.' " *Schrader*, 522 N.W.2d at 212 (quoting *Zens*, 479 N.W.2d at 159). State claims the trial court's error was not prejudicial because Henry was able to cross-examine Dr. Likness and elicit testimony that funneling occurs in nonabused children and because Dr. Fay testified that funneling is not a determinative finding to show sexual abuse. Henry claims the error was prejudicial because if Exhibit Z was admitted, "reasonable

minds would have differed as to whether the medical evidence of the complaining witness was within normal limits." Henry also points out that his psychological expert stated that in his opinion the boys were coached. Henry claims the psychological evidence, when coupled with Exhibit Z, would have led the jury to a different result. For the most part, these claims and allegations are not proven in the record.

[¶ 23] Henry should have been able to counter State's Exhibit 2 with a picture, not just with words. The trial court denied the defense the same tools it permitted the prosecution. The trial court should have admitted Exhibit Z. It failed to maintain an even playing field. However, Henry has not established that the trial court's abuse of discretion in denying Henry the use of Exhibit Z was sufficiently prejudicial to Henry's defense to require a new trial. Therefore, we affirm.

[¶ 24] AMUNDSON, J., concurs.

[¶ 25] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur in result.

KONENKAMP, Justice (concurring in result).

[¶ 26] The evidentiary ruling at issue here, to borrow from Justice Frankfurter, involves "living law in some of its most delicate aspects...." Our decision today "may be important to results hereafter to be reached" and so a separate explanation for affirmance is necessary. *Niemotko v. Maryland*, 340 U.S. 268, 273, 71 S.Ct. 325, 328, 95 L.Ed. 267, 271 (1951).

[¶ 27] From 1109 pages of trial transcript, multiple motions, acquittals on fifteen counts and convictions on five counts, one issue emerges on appeal: the photo. The Court terms the trial judge's refusal to admit it an abuse of discretion. By its calculus, if one side uses an exhibit, then the other side should be able to use a like exhibit. Such an approach relegates trial judges to functionaries, ignoring nuance, to achieve superficial parity in evidentiary rulings. Our rules of evidence, devised to attain truth and justice, call at times for careful discernment in deciding whether to admit doubtful material.

SDCL 19–9–2 (Rule 102); *see also* John W. Larson, South Dakota Evidence § 102.1 (1991).

[¶ 28] Let us recognize the fine distinction between an illustration and a photo. State's Exhibit 2 was a medical illustrator's pencil drawing of what an abnormal anus would look like in a sexually abused child. Defense Exhibit Z, taken from a treatise, was a color photograph of an abnormal anus, reportedly from a child who had not been sexually abused. This photograph was an exact depiction offered to invite comparison with the photos of the actual victims in this case. The illustration, on the other hand, merely represented the characteristics generally found in similar sexual abuse. The trial court deduced the two exhibits were not the same as one merely illustrated a condition, whereas the other called for the jury to prejudicially measure one condition against the other. Even if we may have decided differently, for the trial court to rule one admissible and the other inadmissible is certainly not against reason. *State v. Barber*, 1996 SD 96 ¶ 14, 552 N.W.2d 817; *State v. Lykken*, 484 N.W.2d 869, 874 (S.D.1992).

[¶ 29] Furthermore, during trial experts for both sides agreed the abnormal condition found in these two boys could be caused by something other than sexual abuse. A picture showing the abnormality in a nonabused child, therefore, was superfluous. *Kramer v. Sioux Transit, Inc.*, 85 S.D. 232, 180 N.W.2d 468, 471 (1970) (noting "[t]he admission of cumulative evidence is ordinarily in the sound discretion of the trial court...."); *Johnson v. Washington County*, 518 N.W.2d 594, 601 (Minn.1994).

[¶ 30] For these reasons, I respectfully concur in result.

[¶ 31] MILLER, C.J., and GILBERTSON, J., join this special writing, and I am authorized to so state.