769 P.2d 461

**STATE of Arizona, DIVISION OF FINANCE, Petitioner Employer,**

**State Compensation Fund, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Neuel J. Weathersby, Respondent Employee.**

**No. 1 CA–IC 88–064.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 17, 1989.

Redesignated as Opinion and Publication Ordered Feb. 24, 1989.

J. Victor Stoffa O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C., Phoenix, for petitioner employer and carrier.

Christopher Kamper, Chief Counsel, State Compensation Fund, Phoenix, Catherine A. Fuller, Chief Counsel The Indus. Com'n of Arizona, Phoenix, for respondent.

J. Terence Fox, Phoenix, for respondent employee.

## OPINION

GERBER, Judge.

This is a special action review of an Industrial Commission award for continuing temporary benefits. Because the administrative law judge erroneously denied cross-examination of Dr. Stephen Hempelman, we set aside the award, and therefore need not review any other issue on appeal.

## FACTS

Respondent employee (claimant) filed a claim for an industrial injury resulting from an August, 1984 exposure to desert heat. Petitioner carrier (the State Compensation Fund) accepted compensability but terminated all benefits in March, 1985, asserting that claimant had not suffered a permanent disability. Claimant protested, hearings were conducted, and claimant was awarded continuing temporary compensation benefits in December, 1985.

On February 25, 1987, the Fund again terminated claimant's benefits. Claimant again protested, and hearings occurred in July and September, 1987. At the close of the hearing on September 15, the adminis-

trative law judge requested the parties to identify the necessary witnesses "[i]f we limit the next step in the query to whether or not [claimant's] psychiatric condition is stationary...." Claimant initially requested Dr. Joseph Benjamin, a psychiatrist, Dr. Neal Olshan, a psychologist, and Dr. Hempelman, a neurologist. Claimant's counsel conceded that Dr. Benjamin was his chief witness, through whom claimant could present his case:

THE JUDGE: My question is: Why can't we just have Dr. Benjamin testify?

.      .      .      .      .

MR. FOX: Yes. I guess he could on the psychiatric condition, explain what the nature is of the need for continuing medical care and treatment, that is correct. He would be my main witness.

.      .      .      .      .

THE JUDGE: All right. Well, I'm going to start with Dr. Benjamin on the applicant's side. *And I want every bit of evidence presented through him that can be.*

And I will remind counsel that they are not bound by the normal rules of evidence here at the Commission. And *if some basic foundation is set forth as to reports and that these types of reports are commonly used by the doctor in forming opinions—*

MR. FOX: Understood.

THE JUDGE:—*and making judgments about patients, then I am going to let him comment on what is in those reports and what effect or value they have in supporting his testimony.*

MR. FOX: I see the need for the Court's economy. At this point I will say that my main, lead witness for the psychiatric care of this gentleman is certainly Dr. Benjamin.

THE JUDGE: All right. I am not ruling out bringing in the others, but I want to start with Dr. Benjamin. And I want every effort made to get every bit of evidence on the applicant's side in through him that can be.

MR. FOX: Understood.

(emphasis added).

At this juncture, the Fund's counsel noted a potential problem with this methodology:

MR. STOFFA: Mr. Fox has quite courteously and candidly advised me of what primarily was conveyed to him of the opinion of Dr. Hempelman. I have not yet seen a report and maybe I should defer these comments until I do see a report. But it may well be that if the opinions are such as counsel has been given to understand thus far, that it will be absolutely impossible for me to *cross examine* Dr. Hempelman's conclusions if they are conveyed through the mouth of Dr. Benjamin.

.      .      .      .      .

THE JUDGE: We can cross that bridge when we come to it.

MR. STOFFA: Let's wait until I get the report.

THE JUDGE: All right. Okay.

(emphasis added).

On October 8, 1987, claimant's counsel filed Dr. Hempelman's report with the administrative law judge. The Fund's counsel was served with a copy of this report but apparently it was misfiled upon receipt at counsel's office.

At a continued hearing on October 22, 1987, Dr. Benjamin testified that claimant's psychiatric condition related to the industrial injury and was not stationary. In giving this opinion, Dr. Benjamin relied in part on Dr. Hempelman's report. The Fund's counsel objected that this report "was *subject to our rights of cross-examination...."* (emphasis added).

At the close of this hearing, the administrative law judge requested letters from the parties identifying additional experts on the psychiatric issue, specifically about what these witnesses would add to the psychiatric testimony already given.

On October 29, 1987, the Fund's counsel wrote the administrative law judge to convey his "impression" that claimant might have submitted Dr. Hempelman's report into evidence. Assuming this submission,

counsel objected "to any of Dr. Hempelman's conclusions, to the extent same are currently in the record by testimony or by documentary evidence." On October 30, 1987, claimant's counsel responded, arguing that the Fund's objection to Dr. Hempelman's report was "inappropriate, untimely and without cause." Counsel argued that three weeks had passed since he had filed Dr. Hempelman's report, and also that it was a "reasonable substitute for further hearings and further testimony."

On November 3, 1987, the Fund's counsel wrote the administrative law judge to acknowledge that his office had misfiled Dr. Hempelman's report and that, as a result, counsel had only recently discovered that this report was in evidence. For this reason, counsel sought *to reserve our right to ... cross-examination* of the ... [neurologist] involved...." (emphasis added).

At the close of a continued hearing on December 15, 1987, the Fund's counsel requested Dr. Hempelman because "on proper foundation, [he] would have a difficult time with causal relationship as well." The administrative law judge reserved judgment, and instead directed the parties to submit memoranda based on the current record.

> THE JUDGE: Now, once I have got these memos,—and in the meantime I will be reviewing the file. And after I have considered the memos, then I will decide whether or not we need any additional witnesses. And you will either get a Notice of Further Hearing in the mail, or you will get a decision after that. Okay?
>
> MR. STOFFA: That is fine.

After receiving the requested memoranda, the administrative law judge issued an award for continuing temporary benefits. He found that the December, 1985 award conclusively established that claimant had sustained a work-related heat stroke or prostration resulting in organic brain dysfunction and that the physical effects of this injury were then stationary but that the mental effects were not. Regarding claimant's current need for psychiatric care, the administrative law judge found

the evidence conflicted and resolved this conflict in favor of Dr. Benjamin's opinion.

The Fund requested administrative review, asserting denial of the right to cross-examine Dr. Hempelman:

> The ALJ additionally considered the reporting of Dr. Hempelman without cross-examination by the defense. Not knowing that was going to be the case, defendants had taken the deposition of Dr. Hempelman on October 19, 1987. At that time, Dr. Hempelman's attention was directed to claimant's alleged left-sided neuromuscular problems which were seen by Dr. McKinley for the first time around May of 1985 and the following interchange occurred on that deposition:
>
> Q. If they [the neuromuscular problems] were manifested for the first time nine months post-injury, wouldn't you agree that there would be no way to state with medical probability at least that they were causally related to the heat exposure eight, nine months earlier?
>
> A. Given those constraints, I would have to say that you're going to have problems making a connection.
>
> Q. Right. Not that you couldn't perhaps, but that you were going to have problems, that is no longer your primary diagnosis.
>
> And any connection you might make would be in the realm of supposition or possibilities, correct?
>
> A. All right.
>
> ... Obviously, cross-examination of Dr. Hempelman was required. The quoted material is submitted here as an offer-of-proof. Of course, since no testimony was taken from Dr. Hempelman, the ALJ solely considered his medical reporting which suggested that there was physical impairment resulting from the August 24, 1984 heat exposure that included 'difficulty in manipulating the left hand.'

The administrative law judge summarily affirmed the award. This special action followed.

## DISCUSSION

The Fund asserts that it had a right to cross-examine Dr. Hempelman. By filing Dr. Hempelman's report, claimant submitted substantive evidence. *See, e.g., Scoggins v. Industrial Comm'n,* 20 Ariz. App. 126, 510 P.2d 756 (1973). *See also* A.A.C. R4–13–155 and R4–13–141(D) (subject to right of cross-examination, filed report considered to be in evidence). Moreover, in his post-hearing memorandum, claimant relied on this report as independent evidence that his mental condition was not stationary.

 This substantive submission transgressed the limits of Rules 703 and 705, Arizona Rules of Evidence, which permit a testifying expert to disclose and rely on a report not admitted into evidence without, however, transforming the content of the report into substantive evidence. *See State v. Jessen,* 130 Ariz. 1, 633 P.2d 410 (1981); *Lynn v. Helitec Corp.,* 144 Ariz. 564, 698 P.2d 1283 (App.1984). *See also* Rule 703, comment. *But cf. State v. Lundstrom,* 157 Ariz. 485, 759 P.2d 631 (App.1988), *rev. granted* (July 19, 1988) (supreme court specified issue of whether testifying expert should disclose to jury the details of non-testifying expert's opinion).

We recognize that an administrative law judge is not bound by rules of evidence. *See* A.R.S. § 23–941(F). However, he is required to apply procedural rules to achieve substantial justice. *Id.* Rules 4–13–155 and 4–13–141 preserve the fundamental right of cross-examination necessary to a fair proceeding. *See, e.g., Tyree v. Industrial Comm'n,* 159 Ariz. 92, 764 P.2d 1151 (App.1988); *Scheytt v. Industrial Comm'n,* 134 Ariz. 25, 653 P.2d 375 (App.1982). The right of cross-examination is necessary for substantial justice.

Claimant contends that the Fund waived any right to cross-examine Dr. Hempelman. This right can indeed be waived but not "without a clear showing of an intent to relinquish such right." *A.J. Bayless Markets, Inc. v. Industrial Comm'n,* 134 Ariz. 243, 245, 655 P.2d 363, 365 (App.1982). No such clear intent to waive appears here. While it is true that the Fund first asserted the right to cross-examine Dr. Hempelman in the November 3, 1987 letter based on the submission of Dr. Hempelman's report, this delay was the result of clerical error, not acquiescense. Upon discovery of the error, counsel reacted promptly.

We accordingly conclude that the Fund was denied its fundamental right to cross-examine Dr. Hempleman. For this reason, we set aside the award.

HAIRE, C.J., and SHELLEY, J., concur.