270 P.3d 874

Melinda S. HENRICKS, Appellant,

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY,**
an Agency,

and

**Az Des FAA, Appellees.**

**No. 1 CA–UB 10–0359.**

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 16, 2012.

Melinda S. Henricks, Mesa, Appellant In Propria Persona.

Thomas C. Horne, Arizona Attorney General By Jane A. Butler, Assistant Attorney General, Tucson, Attorneys for Appellee Arizona Department of Economic Security.

**OPINION**

BROWN, Judge.

¶ 1 Melinda Henricks challenges a decision of the Appeals Board ("Board") of the Arizona Department of Economic Security ("Department") finding her liable for overpayment of cash assistance benefits. Henricks asserts she was not prepared for her hearing because the Department had advised her that the alleged overpayment was based on improper issuance of food stamps, not cash assistance benefits. We conclude that Hen-

ricks was not afforded due process because the Department failed to properly notify her of the issue to be addressed at the overpayment hearing. We therefore reverse and remand for further proceedings.

## BACKGROUND

¶ 2 Henricks received cash assistance benefits for herself and two of her children from October 2007 through May 2009 in the amount of $5093. In October 2009, the Department discovered that one of Henricks's children was a "benefits capped child"[1] and therefore ineligible for the benefits he received. The Department determined that Henricks had therefore received an overpayment of $1540.

¶ 3 On November 27, 2009, the Department mailed Henricks a notice captioned "NOTICE OF REPAYMENT OF A CASH ASSISTANCE OVERPAYMENT." The notice stated: "It has been determined that you received more Cash Assistance (CA) benefits than you were entitled to receive.... This is because THE AGENCY INCORRECTLY ISSUED FOOD STAMPS TO ONE OR MORE INELIGIBLE HOUSEHOLD MEMBERS."

¶ 4 Henricks timely requested a "fair hearing"[2] and the Department issued a notice of hearing dated December 14, 2009. Under the section titled "Issue and Section of Law and Regulations Involved," the notice read: "Overpayment of Cash Assistance Benefits–Arizona Revised Statutes, Title 46, Chapter 2, especially section 46–213, Arizona Administrative Code, Title 6, Chapter 12, especially Article 11[.]"

¶ 5 Henricks attended the hearing in person in January 2010. At the outset, the Administrative Law Judge ("ALJ") informed Henricks that the hearing was for the overpayment of cash assistance benefits. Henricks replied that she believed the purpose of

the hearing was to address "incorrectly issued food stamps." The Department's representative, Glen Morris, explained that the statement regarding food stamps in the November notice was a "misprint" and that the overpayment was actually for cash assistance benefits she received for a "benefits capped child." In response to the ALJ's question to Henricks of whether she had any witnesses, Henricks responded that she was "unaware of the actual problem" or "things that have happened" and therefore she did not "know the facts for [her] to have brought witnesses." The ALJ proceeded with the hearing without further comment regarding Henricks's concerns about the notice.

¶ 6 The Department submitted twenty-eight exhibits, consisting of more than 200 pages. The ALJ took a recess (the record does not disclose how long it was) to give Henricks the opportunity to review the exhibits. Morris then gave a highly technical explanation about why the Department was seeking overpayment from Henricks. He stated that the Department should not have paid cash assistance benefits for one of Henricks's children because the child was "benefits capped." Morris explained further that Henricks "had no way of ... knowing" about the problem, but "unfortunately, the Department ... doesn't penalize [itself] when it makes an error."

¶ 7 Following the hearing, the ALJ issued a decision finding that "[d]espite the fact that the claimant's overpayment was a result of the Department's error in this case, the claimant is liable for the $1,540.00 overpayment made to her," citing Arizona Revised Statutes ("A.R.S.") section 46–213(B) (2005).[3] The ALJ's decision did not address the Department's mistake in informing Henricks that the alleged overpayment was related to issuance of food stamps.

---

1. A child who is born during a period of time when his or her parent or caretaker is receiving cash assistance or supportive services is ineligible to receive cash assistance for a specified period of time. *See* Ariz. Admin. Code ("A.A.C.") R6–12–308(A).

2. Arizona Administrative Code R6–12–1002 provides that "[a] person who wishes to appeal an

adverse action shall file a written request for a fair hearing ... within 20 days of the adverse action notice date."

3. Section 46–213(B) provides in relevant part: "If a recipient is overpaid for whatever reason, the recipient is liable for the amount of the overpayment."

¶ 8 Henricks petitioned for review of the ALJ's decision, which the Appeals Board affirmed. On her request for further review, the Board again affirmed the decision of the ALJ. Henricks timely filed an application for appeal to this court, which we granted. We have jurisdiction pursuant to A.R.S. § 41–1993(B) (2011).

## DISCUSSION

■ ¶ 9 We are obligated to accept the Board's factual findings unless they are arbitrary, capricious, or constitute an abuse of discretion. *Rice v. Ariz. Dep't of Econ. Sec.*, 183 Ariz. 199, 201, 901 P.2d 1242, 1244 (App. 1995). We will affirm the Board's decision if it is supported by substantial evidence in the record.[4] *Id.* We are not bound, however, by the Board's legal conclusions and we review de novo whether the Board properly interpreted the law. *Id.*

■ ¶ 10 The law is clear that the Department's efforts to recoup funds it allegedly overpaid to Henricks in the form of cash assistance benefits must be carried out within the constraints of the Due Process Clause. *See* U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); *Atkins v. Parker*, 472 U.S. 115, 128, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (recognizing that welfare entitlements are a form of property protected by the Due Process Clause). In this context, due process requires that a benefit recipient be given "adequate notice detailing the reasons for termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence[.]" *Goldberg v. Kelly*, 397 U.S. 254, 267–68, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *see also Carlson v. Ariz. State Pers. Bd.*, 214 Ariz. 426, 430–31, ¶¶ 14–15, 153 P.3d 1055, 1059–60 (App.2007) ("An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and an opportunity for hearing appropriate to the nature of the case.") (citation and internal quotation omitted).

¶ 11 Proper notice protects benefit recipients from arbitrariness and erroneous deprivation of benefits by giving them enough information to assess whether the Department's calculations are correct. *Allen v. State Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 203 P.3d 1155, 1167–68 (Alaska 2009); *see also Goldberg*, 397 U.S. at 267–68, 90 S.Ct. 1011. In *Allen*, food stamp recipients received excess benefits due to errors made by a state agency, and the agency pursued an overpayment claim. 203 P.3d at 1158–59. Following a ruling in favor of the agency, the recipients challenged the sufficiency of the notice. *Id.* at 1159. The Alaska Supreme Court reversed, finding that the notice failed to comply with applicable regulations, which are "a prerequisite to bringing a recoupment action." *Id.* at 1169. The court reasoned that a notice lacking in sufficient detail requires a benefits recipient to blindly rely "on the calculations of an agency that has admittedly already made a calculation error to that recipient's detriment." *Id.* The court thus concluded it would be unfair, and a violation of due process, to hold the recipient liable for the Department's own errors without providing her with sufficient information to allow her to understand how the Department arrived at its decision. *Id.*

¶ 12 Similarly, Arizona's statutes and regulations relating to administrative procedures require that parties be afforded reasonable notice to provide an opportunity to prepare for a hearing. *See* A.R.S. § 41–1061(C) (2004) ("Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved."). Section 41–1061(B) provides that a hearing notice shall include:

(1) A statement of the time, place and nature of the hearing.

(2) A statement of the legal authority and jurisdiction under which the hearing is to be held.

---

4. Henricks presents several new exhibits on appeal and asks that this court "compare [her] evidence to [the Department's]." In our discretion, we decline to consider the new material submitted by Henricks. *See* A.R.S. § 41–1993(B)

("All such appeals shall be limited to the record before the department unless the court orders otherwise."). Such evidence must generally be submitted at the initial hearing.

(3) A reference to the particular sections of the statutes and rules involved.

(4) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.

¶ 13 Additionally, the Department has promulgated rules establishing notice requirements relating to cash assistance benefits. *See* A.A.C. R6–12–101(2), –907. The Arizona Administrative Code requires that "[w]hen the Department plans to take adverse action against [a benefit recipient], the Department shall provide the [recipient] with adequate and timely notice[.]" R6–12–907(A). "Adequate notice" is defined as "a notice which explains the action the Department intends to take, the reason for the action, the specific authority for the action, the recipient's appeal rights, and right to benefits pending appeal[.]" A.A.C. R6–12–101(2).[5] The Department is also required to include "1. The date the adverse action is effective; 2. The names of the eligible and ineligible persons in the unit, if changed by the intended action; and 3. Any effect the intended action may have on the unit members' AHCCCS medical eligibility." A.A.C. R6–12–907 (C). We look to these statutory and administrative provisions for guidance in determining whether Henricks was provided reasonable notice and an opportunity to be heard. *See Allen*, 203 P.3d at 1166–70 (evaluating whether regulatory notice requirements were met in determining whether benefits recipient was afforded due process).

¶ 14 The November notice the Department sent to Henricks stated that the reason Henricks owed an overpayment was that "THE AGENCY INCORRECTLY ISSUED *FOOD STAMPS* TO *ONE OR MORE INELIGIBLE HOUSEHOLD MEMBERS*." (Emphasis added.) This notice was defective because it did not state the correct reason for the overpayment of cash assistance and it failed to include any information about which member of Henricks's household was ineligible.[6] Nor did the notice contain any reference to the "particular sections of the statutes and rules involved." *See* A.R.S. § 41–1061(B)(3). These deficiencies left Henricks unprepared for her hearing and unable to effectively challenge or verify the Department's calculation of her overpayment.

¶ 15 The Department suggests that Henricks received adequate notice because the December 14, 2009, notice of hearing referenced overpayment of "cash assistance benefits" and cited the general rules and statutes regarding cash assistance. However, the notice of hearing did not cure the defect in the first notice, as the first notice likewise stated that the overpayment was for cash assistance but that the *reason* for the overpayment was an incorrect issuance of food stamps. And, similar to the first notice, there was no mention as to which member of Henricks's household was ineligible. The second notice, like the first, also failed to provide any information about a "benefits capped child" or the statutes or rules relied upon by the Department in making the determination that one of Henricks's children was ineligible. Thus, nothing about the general reference to cash assistance in the second notice would have reasonably alerted Henricks that the more specific previous statement regarding food stamps had been corrected or changed. *See Smart v. Alaska Dep't of Health and Soc. Servs.*, 237 P.3d 1010, 1015–16 (Alaska 2010) (viewing all communications from the agency "in their totality" to determine whether Medicaid recipient received sufficient notice of an overpayment recoupment action).

¶ 16 It was only at the beginning of the hearing that the Department representative declared the statement regarding food stamps in the first notice to be a "misprint." By that time, it was too late for Henricks to have a meaningful opportunity to prepare for the hearing. Moreover, the hearing notice

---

5. The Department's determination that a benefits recipient has received an overpayment of cash assistance constitutes an "adverse action" that entitles the recipient to a hearing. A.A.C. R6–12–101 (4), –1001(A)(5).

6. Although not relevant to Henricks's appeal, the notice also lacked the required information regarding AHCCCS eligibility.

did not identify the "ONE OR MORE INE-LIGIBLE HOUSEHOLD MEMBER OR MEMBERS," another piece of information that would have assisted Henricks in preparing for the hearing.

¶ 17 The Department also suggests that any defect in the notice was cured because Henricks was given time at the hearing to review the exhibits presented against her. It is unclear from the record how much time Henricks was given to review the more than 200 pages of exhibits, but in any event, a mere recess was an insufficient remedy as Henricks was not afforded a reasonable opportunity to gather evidence, locate potential witnesses, study the relevant legal authorities, and otherwise properly prepare her case.[7]

¶ 18 The record before us does not support the Board's conclusions that "[t]he essential elements of due process were observed[,] [t]he parties received advance notification of the issues to be considered at the scheduled hearing," and "no error exists[ ] which could have misdirected the Claimant to prepare for a hearing regarding a FS [ (food stamps) ] overpayment." Thus, the Board erred in finding Henricks received proper notification. The Board also erred when it determined that "[t]here was no accident or surprise in the proceedings which could not have been

prevented by ordinary diligence." It was not Henricks's responsibility to correct the notification error made by the Department. *See Vargas v. Trainor,* 508 F.2d 485, 489–90 (7th Cir.1974) (holding that benefit reduction and termination notices that failed to provide reasons for the agency's action violated due process despite fact that recipients could call to find out the reasons).

¶ 19 In sum, we hold that the Board's decision to find Henricks liable for overpayment of cash assistance benefits deprived her of a property right without due process of law. *See Carlson,* 214 Ariz. at 433, ¶ 23, 153 P.3d at 1062 (finding denial of due process based on "variance between [the employee's] dismissal notice ... and the facts upon which the Board upheld dismissal"). On remand, if the Department desires to continue pursuit of its claim against Henricks,[8] it must provide her with sufficient notice, which at a minimum means compliance with applicable statutes and regulations.[9]

¶ 20 Henricks next contends that the ALJ incorrectly admitted handwritten documents submitted by the Department into evidence at her hearing. Given our resolution of the notice issue, we need not address this argument. Also, Henricks did not preserve her right to challenge the ruling on appeal because she failed to object to the admission of

---

7. The Department introduced a prehearing summary at the hearing as Exhibit 27. That document may have arguably provided more complete notice to Henricks, especially with regard to which member of her household was ineligible for benefits. However, nothing in the record before us shows that Henricks was given a copy of the prehearing summary as required by A.A.C. R6–12–1003(C). Moreover, the Board did not reference the prehearing summary, nor has the Department relied upon it on appeal. Regardless, service of the prehearing summary would not have corrected the error in the November notice informing Henricks the overpayment claim was based on food stamps.

8. Pursuant to A.R.S. § 46–213(B), if overpayment liability is established, the Department "shall determine the method of securing repayment which is most appropriate to the particular situation .... if the recipient has not obtained assistance or services by intentional misrepresentation or if the overpayment was due to an error on the part of the department of economic security, the department may waive a repayment by the recipient."

9. Henricks also argues that the Department should have provided her with copies of its evidence prior to the hearing. As the Department has recognized in its notices, Henricks has the right to inspect and copy all documents relevant to her case. *See* A.A.C. R6–12–1006(C)(4)(c) (stating the appellant has the right "[t]o copy, at a reasonable time prior to the hearing or during the hearing, any documents in the appellant's case file which are relevant to the issues being heard, and all documents the Department may use at the hearing"). This right, however, does not relieve the Department of its responsibility under A.A.C. R6–12–1003 to mail Henricks a copy of its prehearing summary, which must include "[t]he decision notice and *any other documents* relating to the appeal." (Emphasis added.) As noted, *supra* n. 6, nothing in the record indicates that the Department mailed Henricks a copy of the summary or "any other documents relating to [her] appeal" other than the notices previously discussed.

the handwritten documents during the hearing. *See Campbell v. Warren,* 151 Ariz. 207, 208, 726 P.2d 623, 624 (App.1986). However, in our discretion, we address this issue because it is likely to arise on remand. *See State v. Abdi,* 226 Ariz. 361, 366, ¶ 18, 248 P.3d 209, 214 (App.2011).

¶ 21 The Arizona Rules of Evidence permit the admission of any relevant "writings," including handwritten documents. Ariz. R. Evid. 1001. Moreover, ALJs in administrative proceedings have considerably more leeway in deciding what evidence to admit because they are permitted to consider all relevant evidence. A.R.S. § 41–1062(A) (2004); *State Div. of Fin. v. Indus. Comm'n of Ariz.,* 159 Ariz. 553, 556, 769 P.2d 461, 464 (App.1989). Therefore, assuming the handwritten documents are relevant to the proceeding, they may be properly admitted and considered.

## CONCLUSION

¶ 22 Based on the foregoing, we conclude that the Department failed to provide Henricks with adequate notice of the action against her. Accordingly, we reverse the Board's decision and remand this case for further proceedings consistent with this opinion.

CONCURRING: PATRICIA K. NORRIS and PHILIP HALL, Judges.